OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Jon C. Kundtz, from a judgment of the Franklin County Court of Common Pleas, entering summary judgment in favor of defendants-appellees, AT T Solutions, Inc. (individually "AT T"), Gail S. Schwarz and Michael R. Jenkins, on appellant's claims for age and sex discrimination. *Page 2 
 {¶ 2} Appellant, a former employee of AT T, was born on February 5, 1950. Hired by AT T in 1974, appellant's employment was terminated on June 13, 2002, when he was 52 years old.
 {¶ 3} In 1994, appellant became a member of AT T's "Bank One team," which focused primarily on new sales of AT T data products and services to one particular AT T customer, Bank One. In 1998, AT T and Bank One agreed that Bank One would outsource a significant portion of its telecommunications services to AT T. Accordingly, AT T hired a large number of employees to work with Bank One. At its peak, the team of AT T employees servicing the Bank One account was approximately 400.
 {¶ 4} In 2001, Bank One decided to discontinue its outsourcing relationship with AT T, choosing instead to in-source a significant number of functions AT T had been providing for Bank One. As a result of Bank One returning the telecommunications function back "in-house," AT T no longer needed such a large number of employees on the Bank One account, and it initiated a reduction in force ("RIF") through a force management plan ("FMP"). The first RIF took place in October 2001, affecting approximately 70 AT T employees. The second RIF occurred in February 2002, and affected approximately 90 employees. By the end of 2002, the Bank One team had less than 20 employees.
 {¶ 5} In 2000, appellant became a senior data sales executive. In June 2001, he began reporting directly to appellee Gail Schwarz ("Schwarz"), the director of sales for AT T on the Bank One account. Schwarz (date of birth July 13, 1956) reported to the general manager of the Bank One team, Michael Jenkins ("Jenkins") (date of birth May 5, 1959). In addition to managing appellant, Schwarz managed the other senior data sales *Page 3 
executive on the Bank One team, Brian Law (date of birth September 19, 1961), as well as Denise Gahman, a data account executive. In 2004, Tim Postmus, a business manager, began reporting to Schwarz.
 {¶ 6} In the spring of 2002, Jenkins and his supervisor, Rob Vatter, had discussions regarding Bank One's decision to in-source the majority of its operations. In response, management made a decision to continue with head count reductions, including the elimination of one of the two senior data sales executive positions in the Columbus office. Jenkins subsequently directed Schwarz to reduce one senior data sales executive position.
 {¶ 7} Schwarz and Jenkins both participated in the evaluation process, and Sabrina Jackson, AT T's Human Resources Manager, helped prepare a skills assessment form to assist in evaluating the two senior data sales executives, appellant, and Law. The form ranked both employees in six different categories based on a scoring scale of 1 to 5 (with 5 the highest and 1 the lowest ranking). Appellant received an overall score of 9, while Law received a more favorable score of 20.
 {¶ 8} On April 15, 2002, Jenkins and Schwarz met with appellant and informed him that he had been placed on "at risk" status; appellant thus had 60 days to find another position within AT T or face removal from payroll. Appellant was unable to secure a new position, and his employment ended on June 13, 2002. At the time appellant was terminated, the other senior data sales executive, Law, age 40 at the time, retained his job.[1] Gahman also retained her job at the time of appellant's termination. *Page 4 
 {¶ 9} On December 9, 2002, appellant filed a complaint with the trial court against appellees, alleging various causes of action, including age and sex discrimination, and seeking compensatory and punitive damages. On August 2, 2004, appellees filed a motion for summary judgment (under seal). Appellant filed a response to appellees' motion for summary judgment, and attached to the response his own affidavit. On September 21, 2004, appellees filed a reply brief in support of their motion for summary judgment; also on that date, appellees filed a motion to strike appellant's affidavit.
 {¶ 10} By decision and entry filed on August 12, 2005, the trial court granted appellees' motion for summary judgment. Regarding appellant's claims for age and sex discrimination, the trial court found that appellant's indirect evidence of discrimination was insufficient to establish all of the elements required to establish a prima facie case. The trial court also found that appellant failed to present sufficient evidence to establish a genuine issue of material fact as to his claims for age harassment and sexual harassment, and the court overruled appellees' motion to strike as moot. Accordingly, the trial court granted summary judgment in favor of appellees as to all of appellant's claims.
 {¶ 11} On appeal, appellant sets forth the following three assignments of error for review:
 I. THE TRIAL COURT ERRED IN OVERRULING AS MOOT DEFENDANTS' MOTION TO STRIKE.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF AGE DISCRIMINATION.
 III. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF SEX DISCRIMINATION. II. *Page 5 
 {¶ 12} Appellant's assignments of error are interrelated and will be considered together. In these assignments of error, appellant challenges the trial court's granting of summary judgment in favor of appellees on his claims for age and sex discrimination. [2]
 {¶ 13} This court reviews de novo a trial court's granting of summary judgment. Burden v. Hall, Franklin App. No. 04AP-52, 2005-Ohio-2799, at ¶ 23. Pursuant to Civ.R. 56, in order to obtain summary judgment, a movant must demonstrate: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, such party being entitled to have the evidence construed most strongly in his or her favor. Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 14} A party seeking summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996),75 Ohio St.3d 280, 292. If the moving party satisfies its initial burden, the non-moving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial and, if the non-movant does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. Id., at 293.
 {¶ 15} R.C. 4112.02 provides in part:
 It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * sex * * * [or] age * * * of any person, to discharge without just cause, to refuse to hire, or *Page 6 
 otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
 {¶ 16} We will initially address appellant's contention that the trial court erred in granting summary judgment in favor of appellees on his claim for age discrimination. In McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792, 93 S.Ct. 1817, the United States Supreme Court set forth the evidentiary guidelines regarding burdens of proof in discrimination cases. The Ohio Supreme Court, in Barker v. Scovill,Inc. (1983), 6 Ohio St.3d 146, adopted that analytical framework and applied it to age discrimination actions. Wang v. Goodyear Tire RubberCo. (1990), 68 Ohio App.3d 13, 16.
 {¶ 17} The analysis in McDonnell Douglas involves "a three-step procedure that allocates the shifting burdens of production of evidence on the parties." Id., at 16. Under this analysis, the employee must first "establish a prima facie case of age discrimination. Next, the burden of production shifts to the employer to state some legitimate non-discriminatory reasons for the employee's discharge. Finally, the burden shifts back to the employee to show that the employer's stated reasons were a pretext for age discrimination." Id., citingMcDonnell Douglas and Barker, supra.
 {¶ 18} A plaintiff bringing a claim of age discrimination may establish a prima facie case by producing either direct or indirect evidence of discrimination. Carpenter v. Wellman Prods. Group, Medina App. No. 03CA0032-M, 2003-Ohio-7169, at ¶ 15. In the instant case, appellant contends he presented sufficient indirect evidence of age discrimination sufficient to survive summary judgment.
 {¶ 19} The Ohio Supreme Court has held that, in cases where there is a lack of direct evidence of age discrimination, a plaintiff seeking to establish a prima facie case *Page 7 
must show that he or she: "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." Coryell v. Bank One TrustCo., 101 Ohio St.3d 175, 2004-Ohio-723, at paragraph one of the syllabus.
 {¶ 20} In the instant case, the trial court, in considering the elements of the prima facie case, noted it was undisputed appellant satisfied the first two elements, i.e., he was 52 years of age and was discharged. Appellant argues that the trial court, in analyzing the remaining elements of a prima facie case, erred in determining he was not qualified for the position, and by holding him to a higher standard of proof based upon appellees' allegation that appellant's termination was part of a RIF. Regarding the standard of proof in a case involving a RIF, appellant argues that, contrary to the trial court's holding, there is no heightened standard; rather, appellant maintains, the standards are just different.
 {¶ 21} Ohio courts, however, including this court, have held that a RIF "necessarily requires modification of the indirect method of proof and establishing a prima facie case by modifying the fourth element under Barker and McDonnell Douglas[.]" Dahl v. Battelle MemorialInst., Franklin App. No. 03AP-1028, 2004-Ohio-3884, at ¶ 15. Thus, in cases of a termination due to a RIF, "an age discrimination plaintiff carries a greater burden of supporting allegations of discrimination by coming forward with additional evidence, be it direct, circumstantial, or statistical, to establish that age was a factor in the termination." Id. See, also, Ramacciato v. Argo-Tech Corp., Cuyahoga App. No. 84557,2005-Ohio-506, at ¶ 29 (in the case of a RIF, "the fourth element of the prima facie case is modified to require * * * [a plaintiff] to offer `additional direct, circumstantial, or statistical evidence tending to indicate that * * * [the employer] singled [him] out * * * for impermissible *Page 8 
reasons' ").[3] The rationale for this burden is that "an employer's decision to discharge a qualified, older employee should not be considered `inherently suspicious' because `in a RIF, qualified employees are going to be discharged.' " Id.
 {¶ 22} Appellant also argues that the question of whether AT T instituted a legitimate RIF raises a genuine issue of fact. More specifically, appellant argues that the determination whether or not his position was eliminated as a result of a legitimate RIF, or whether he was terminated and replaced in his position, was a question of fact for the jury. Appellant attempted to show that his termination was not the result of a RIF based upon his assertion that an individual outside of the protected class, Timothy Postmus, replaced him. Appellant maintains that Postmus, age 32 at the time of appellant's termination, assumed a substantial amount of appellant's responsibilities.
 {¶ 23} The trial court rejected appellant's contention that Postmus replaced appellant, noting that Postmus was located in Chicago (rather than Columbus), and did not report to the same supervisor at the time of the RIF. Upon review, we agree with the trial court's determination that Postmus did not "replace" appellant.
 {¶ 24} In Barnes v. GenCorp., Inc. (C.A.6, 1990), 896 F.2d 1457, 1465, the court held:
 * * * A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced *Page 9 
 after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties. See Sahadi [v. Reynolds Chemical (C.A.6, 1980)], 636 F.2d [1116] at 1117 ("[plaintiff] was not replaced; his former duties were assumed by Alexander, who performed them in addition to his other functions").
 {¶ 25} In the present case, as noted by the trial court, the facts indicate that Postmus and appellant worked out of different offices, had different supervisors, and also performed different duties. According to the deposition testimony of Jenkins, the general manager of the Bank One team, while Postmus performed some of the duties of appellant and Law, Postmus performed "other functional responsibilities as a lead salesperson" that appellant and Law did not, including dealing with Bank One's international branch and its commercial business unit, "all headquartered in Chicago." (Jenkins Depo., at 276-277.) Appellant's former supervisor, Schwarz, testified that, following appellant's termination, his duties were divided among various members of the team, including Schwarz herself and an individual named Bill Stoner, whose duties included pricing. Schwarz further testified that Postmus did not report to her until 2004. Based upon this court's de novo review, we agree with the trial court's determination that Postmus did not replace appellant following his termination.
 {¶ 26} Finding that Postmus did not replace appellant, the trial court further determined that appellant was part of a RIF, and we also agree with that conclusion. The undisputed evidence indicates that, because of a strategic decision by Bank One, in which management decided to no longer outsource its telecommunications services to AT T, the number of employees involved with AT T's Bank One team was reduced from *Page 10 
roughly 400 to less than 20 near the end of 2002. Further, at the time of appellant's termination, two rounds of RIFs had already taken place, involving reductions of approximately 70 AT T employees in October 2001, and approximately 90 more employees in February 2002. In his deposition, Jenkins testified that he and his supervisor, Rob Vatter, made the decision to eliminate one of two senior data sales executives in the Columbus office in response to Bank One's decision to in-source its business operations, and because of a resulting decline in revenue to AT T.
 {¶ 27} We note that, on appeal, the parties vigorously dispute whether appellant satisfied the third element of a prima facie case, i.e., whether appellant was "qualified." Appellees contend the evidence it submitted established that appellant was not qualified to hold the position of senior data sales executive after the RIF.
 {¶ 28} Appellant, on the other hand, argues that this element of the prima facie case is not intended to be burdensome, and that analysis of his job performance at this stage, based upon evidence submitted by appellees, is improper. See, e.g., Quinn-Hunt v. Bennett Ent., Inc.
(C.A.6, Dec. 21, 2006), No. 05-4646 ("[i]nstead of considering a defendant's proffered justification and accompanying evidence when determining whether a plaintiff has presented sufficient evidence to prove that she was qualified, courts should consider that evidence at the second and third stages of the McDonnell-Douglas inquiry");Cline v. Catholic Diocese of Toledo (C.A.6, 2000), 206 F.3d 651, 660-661
("when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason `produced' by the defense as its reason for terminating plaintiff"). *Page 11 
 {¶ 29} As to the fourth element of a prima facie case, some federal courts have recognized, in the context of a RIF, that "the prima facie case is rarely the focus of the ultimate disagreement. Rather, `the exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a non-discriminatory reason for the [discharge].' " Healy v. New York Life Ins. Co. (C.A.3, 1988),860 F.2d 1209, 1214, fn. 1, quoting Coburn v. Pan American World Airways,Inc. (D.C. Cir.1983), 711 F.2d 339, 343.
 {¶ 30} In the present case, we do not find it necessary to determine whether appellant presented sufficient evidence, at the prima facie stage, as to whether he was qualified and/or whether he met a heightened standard under the fourth prong of the prima facie case. Rather, even assuming, without deciding, that appellant had established a prima facie case, summary judgment would still have been appropriate in the instant case as appellant failed to present evidence that appellees' articulated reasons for his termination were a pretext for unlawful discrimination. See, e.g., Eddings v. LeFevour (N.D.Ill, Sept. 29, 2000), No. 98 C 7968 (because plaintiff cannot establish employer's reasons for failing to promote were pretextual, it is not necessary to decide whether plaintiff has in fact established a prima facie case of discrimination);Morris v. Vanderburgh County Health Dept. (C.A.7, 2003), 58 Fed.Appx. 654, 656 (where issue whether plaintiff presented a prima facie case overlaps with issue of pretext, appellate court need not consider the issue of a prima facie case and will proceed to decide whether plaintiff established pretext).
 {¶ 31} Here, appellees offered a legitimate, non-discriminatory reason for terminating appellant's employment, i.e., that the termination occurred as a result of the *Page 12 
company wide RIF, precipitated by Bank One's decision to no longer outsource its telecommunication needs, ultimately resulting in decreased revenue to AT T, and that the decision to terminate appellant as part of the RIF was based upon an assessment ranking and appellees' belief that the other senior data executive, Law, was more qualified to handle the position going forward (i.e., after the RIF). See, e.g., Vickers v.Wren Industries, Inc., Montgomery App. No. 20914, 2005-Ohio-3656, at ¶ 28 (RIF constitutes legitimate, non-discriminatory reason for plaintiff's discharge).
 {¶ 32} Having come forward with a legitimate, non-discriminatory reason for the discharge, the burden then shifted to appellant to show that appellees' proffered reason was false and that "discrimination was the real reason for its action." Hoyt v. Nationwide Mut. Ins. Co., Franklin App. No. 04AP-941, 2005-Ohio-6367, at ¶ 67. In order to refute the employer's legitimate, non-discriminatory reason offered to justify an adverse employment action, a plaintiff is required to show either that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. Hoffman v. CHSHO,Inc., Clermont App. No. CA2004-09-072, 2005-Ohio-3909, at ¶ 26. In essence, appellant must show that appellees' " `business decision' was so lacking in merit as to call into question its genuineness."Hartsel v. Keys (C.A.6, 1996), 87 F.3d 795, 800.
 {¶ 33} As previously indicated, following the RIF, the AT T staff was cut from approximately 400 employees to 20. We note that appellant did not present any statistical evidence regarding the RIF, i.e., there was no evidence showing that the RIF had a disparate impact on older employees generally, nor did appellant present evidence that the RIF was unnecessary. *Page 13 
 {¶ 34} Appellant essentially argues that his placement as "at risk" was not credible because it was based upon a flawed methodology. Appellant contends that the type of skill assessment form utilized by AT T is clearly subjective, and that the assessors could readily manipulate the results. Appellant also challenges the assessment by his former supervisor, Schwarz, that Law was more qualified. Appellant contends that Schwarz had not supervised him (appellant) for very long prior to the evaluation, and that Law was, in fact, less qualified.
 {¶ 35} As noted under the facts, the employer utilized an "employee skills assessment tool" regarding the senior data sales executive positions. The skills assessment tool had six categories, and a numerical score was assigned to each category, ranging from 1 to 5, with a score of 1 representing a "basic" level of proficiency, a score of 3 representing an "intermediate" level of proficiency, and a score of 5 representing an "advanced" level of proficiency. Law received higher scores in all six categories, receiving a total numeric score of 20 compared with appellant's score of 9. Based upon the evaluation process, including the skills assessment form, Law was retained as the senior data sales executive at the time of appellant's termination.
 {¶ 36} Appellees explained the skills evaluation process through deposition testimony. Jenkins stated that the evaluation included a consideration of selling skills "going forward," with the hope of "turning around the revenue curve." (Jenkins Depo., at 104.) Based upon the skill set evaluation, it was "determined that Brian [Law] had a skill set that we wanted to use going forward that [appellant] did not possess." (Jenkins Depo., at 159.) Jenkins explained that the skills "we were looking for going forward were more on the IP [internet protocol], VPN [virtual private network], hosting capabilities and *Page 14 
going out and establishing new relationships within the Bank One enterprise versus staying focused on existing product and services that were part of the outsourcing arrangement." (Jenkins Depo., at 114-115.) According to Jenkins, "[Law] had skills in the IP, the internet capabilities, and [appellant's] skills were based more on the network the bank had and was buying through their * * * arrangements with private line services." (Jenkins Depo., at 104.)
 {¶ 37} While appellant challenges whether the evaluation accurately reflected his abilities, in order to discredit the employer's proffered reason, a plaintiff cannot simply show that the employer's decision was wrong or mistaken, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes v. Perskie (C.A.3, 1994), 32 F.3d 759, 765. See, also, Gustovich v. AT T Communications,Inc. (C.A.7, 1992), 972 F.2d 845, 848 ("[i]ncorrect ratings are not age discrimination"); Weller v. Titanium Metals Corp. (S.D.Ohio, 2005),361 F.Supp.2d 712, 722 (generally, soundness of employer's decision to evaluate performance may not be questioned as a means of showing pretext; "age discrimination action is not a `device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities' ").
 {¶ 38} Further, despite appellant's general contention that this type of assessment necessarily involves subjective elements, there must still be a showing that "this subjectivity was used as a pretext for discrimination." Brown v. EG G Mound Applied Technologies, Inc.
(S.D.Ohio, 2000), 117 F.Supp.2d 671, 680 (fact that individual managers had flexibility in determining individual components of matrix score does not *Page 15 
indicate discrimination). See, also, Dorsch v. LB. Foster Co. (C.A.7, 1986), 782 F.2d 1421, 1427 ("A subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one").
 {¶ 39} In the present case, it is undisputed that management issued a directive to reduce one of the two senior data sales executive positions in the Columbus office. It is also undisputed that Law received a higher score on the skills assessment form. Jenkins gave deposition testimony that his evaluation of Law and appellant was focused upon determining which individual was better qualified going forward. Here, the employer presented evidence that it made a business decision that Law was more qualified to perform the duties that would remain after the RIF, and appellant has not demonstrated that appellees acted in bad faith in the evaluation, or did not believe Law was the more qualified candidate. Nor has appellant adduced evidence suggesting that appellant's score was manipulated out of a desire to discriminate based upon age.
 {¶ 40} Appellant's affidavit sets forth many of his accomplishments while employed at AT T. However, "[a]n employee's own opinions * * * about his or her qualifications do not establish a material factual dispute on the issue of pretext." Webb v. Level 3 Communications,LLC (C.A.10, 2006), 167 Fed.Appx. 725, 730. Further, in the context of a RIF, "[considerations such as strong performance evaluations, and a long history of employment with a company cannot protect even competent employees from a RIF." Fletcher v. Lucent Technologies, Inc. (D.N.J., Sept. 27, 2005), 36 Employee Benefits Cas. (BNA) 1961. Rather, "[i]n a RIF, qualified employees are going to be discharged." Brocklehurst v.PPG Industries, Inc. (C.A.6, 1997), 123 F.3d 890, 896. See, also,Rea v. Martin Marietta Corp. (C.A.10, 1994), 29 F.3d 1450, 1456
("[plaintiff's evidence of her *Page 16 
satisfactory work performance is not probative because in a reduction in force case, `someone has to be let go,' * * * including satisfactory employees").
 {¶ 41} Here, whether or not appellant's past performance was adequate is not determinative as to the issue of pretext. See Bundy, supra (although plaintiff advanced some evidence to show that he performed adequately in his former position, such evidence was not relevant to question who was qualified to perform in the newly created, more complex position). Rather, the issue is whether, in the context of a RIF, appellant's supervisors could have honestly, and without considerations related to age, concluded that his anticipated future contribution ranked him below the other senior data sales executive, Law. Again, even if the employer's business judgment was ultimately not correct regarding which employee would be best able to assume the duties after the RIF, it is not the province of this court to second guess that judgment. SeeManofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 669
("[a]s a general rule, the judiciary will not second guess business judgments by an employer making personnel decisions").
 {¶ 42} In his affidavit, appellant cites, as evidence of discrimination, the fact that, in December 2003, he received a letter from the "SHPS" benefits organization used by AT T informing him that his health insurance benefits had been cancelled. Appellant stated in his affidavit that, "[subsequently, through several conference calls between AT T Human Resource Department and SHPS, I was able to convince them of their error." (Appellant affidavit, at ¶ 104.) Appellant, however, has not presented any evidence that the individuals involved in the RIF decision had anything to do with this error. *Page 17 
 {¶ 43} Appellant also contends, as evidence of discrimination, that his supervisor, Schwarz, forced him to share some of his sales with other members of the AT T team. We find that appellant's evidence on this issue is insufficient, as a matter of law, to show that his employer's reason for terminating him was a pretext for discrimination. At the outset, it is undisputed that Schwarz had no input into the initial decision to reduce, as part of a continuing RIF, one of the two senior data sales executive positions. Further, while Schwarz participated in the subsequent evaluation process of appellant and Law, there is no evidence that any purported shared sales played a role in that process, or operated as a subterfuge for age discrimination. We note that, during her deposition, Schwarz was questioned about whether another employee, Gahman, received compensation for part of appellant's sale on an "RSI 2." Although Schwarz disagreed that a portion of appellant's sale was distributed, she further noted that Gahman "would not have received compensation on it" because revenue was not paid on production. (Schwarz Depo., at 116.) Rather, at that time, the department was under a new compensation plan and revenue was based on "total billed revenue." (Schwarz Depo., at 115.)
 {¶ 44} Appellant also challenges the legitimacy of the RIF by noting that the purported RIF resulting in his termination involved a much smaller number of employees, i.e., he contends that a third round of reductions resulted in the elimination of only four employees. However, "[a]n employer need not dismiss any particular number of employees, or terminate a set percentage of the work force, to institute a reduction in force." LeBlanc v. Great American Ins. Co. (C.A.1, 1993), 6 F.3d 836,845 (fact that employer laid off only three employees, including plaintiff, as part of initiative to trim *Page 18 
expenses does not by itself suggest that dismissals were mere pretexts rather than bona fide RIF). See, also, Schram v. Schwan's Sales Ent,Inc. (C.A.6, 2005), 124 Fed.Appx. 380, 384 (eliminating even "a single job can constitute a legitimate RIF"). Further, the evidence is undisputed that AT T's Bank One team went from over 400 employees to approximately 20 employees as a result of Bank One's decision to no longer outsource its telecommunications services and, at the time of appellant's termination (the third RIF), the first two rounds of RIFs had already resulted in the elimination of approximately 160 employees.[4]
 {¶ 45} Based upon the foregoing, we find that appellant has failed to adduce evidence to demonstrate a genuine issue of material fact as to whether appellees' proffered non-discriminatory reasons for his termination were a pretext for age discrimination. We therefore conclude that the trial court's entry of summary judgment in favor of appellees on appellant's age discrimination claim was appropriate.
 {¶ 46} Appellant also contends that the trial court erred in granting summary judgment in favor of appellees on his claim for sex discrimination. Ohio courts have adopted the McDonnell Douglas formula to claims for sex discrimination brought under R.C. Chapter 4112.Starner v. Guardian Industries (2001), 143 Ohio App.3d 461, 471. *Page 19 
Thus, in general, in order to establish a prima facie case of sex discrimination by the indirect method, a plaintiff must show that he or she: (1) was a member of the statutorily protected class; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class. Id., at 471.
 {¶ 47} However, in a "reverse discrimination" case, the complainant "bears the burden of demonstrating that he was intentionally discriminated against `despite his majority status[,]' " and, in order to establish such a claim, the typical requirements for a prima facie case of sex discrimination are modified. Murray v. Thistledown RacingClub, Inc. (C.A.6, 1985), 770 F.2d 63, 67. Thus, a prima facie case of reverse discrimination requires the plaintiff to demonstrate: "(1) background circumstances that support the suspicion that defendant is that unusual employer who discriminates against the majority; and (2) that the employer treated differently employees who were similarly situated but not members of the protected class." Filichia v. OpenShelter, Inc. (June 28, 1996), Franklin App. No. 96APE02-136.
 {¶ 48} In the present case, the trial court found that appellant had failed to supplement his affidavit or exhibits to provide evidence that AT T is the unusual employer who discriminates against the majority. The court further found that, because Law, a male, was retained while appellant was terminated, appellant had failed to show that similarly situated women were treated more favorably and retained while appellant was terminated. *Page 20 
 {¶ 49} In asserting that AT T is the unusual employer that discriminates against the majority, appellant focuses on purported discriminatory actions taken by appellant's supervisor, Schwarz. Appellant maintains that Schwarz favored a female, Gahman, over other males that reported to her.
 {¶ 50} Appellees contend that appellant's argument is undermined by his claim that he was replaced by Postmus, a male, i.e., also a member of the same non-minority class, and the fact that the individual retained following the elimination of one of the two senior data sales executive positions was also a male. See, e.g., Brown v. McLean (C.A.4, 1998), 159 F.3d 898, 905 ("[i]n order to make out a prima facie case of discriminatory termination, a plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class").
 {¶ 51} Upon review, we agree with the trial court that the record is devoid of evidence of "background circumstances" supporting a suspicion that AT T is the unusual employer who discriminates against white males generally. While appellant stated in his deposition testimony that Schwarz treated various employees on the Bank One team unfairly, he cited both male and females as the recipients of such unfair treatment, and there is a lack of evidence to demonstrate that males suffered adverse treatment as a class by this employer. See Rossi v. Alcoa,Inc. (C.A.6, 2005), 129 Fed.Appx. 154, 157 (plaintiff's complaint that he received worse treatment than others, both male and female, did not constitute evidence of background circumstances supporting the inference that defendant was the unusual employer who discriminates against the majority). Further, appellant has not offered evidence that AT T unfairly targeted male employees as part of *Page 21 
the RIF. Accordingly, because appellant failed to establish a prima facie case of reverse discrimination, the trial court did not err in granting summary judgment as to this claim.
 {¶ 52} Even assuming appellant had established a prima facie case, he would still be unable to demonstrate that the reason his position was eliminated was a pretext for reverse sex discrimination. We have previously noted, in addressing appellant's age discrimination claim, the legitimate, non-discriminatory business reasons proffered by appellees leading to appellant's discharge.
 {¶ 53} In support of his contention that he was discriminated against on the basis of sex, appellant points to the actions of his supervisor, Schwarz. However, as previously noted, Schwarz was not involved in the initial decision to further reduce positions in the Columbus office, including one of the two senior data sales executive positions, as part of a third RIF, and there is no evidence that the decision to eliminate one of those two positions was motivated by a desire to discriminate on the basis of sex. We also note that Gahman, a female on the Bank One team, was not a senior data sales executive, and there is simply no evidence she was excluded from the RIF because of her gender. Moreover, after the initial decision was made to eliminate one of the two positions at issue, Schwarz was given a directive (along with two other employees) to assist in the evaluation process to eliminate one of the two senior data sales executive positions, and her task at that time was limited to evaluating only those two employees, i.e., appellant and Law. Appellant has failed to present a genuine issue of material fact to sustain a claim of reverse sex discrimination.
 {¶ 54} Appellant also argues that the trial court erred in failing to consider all the averments in his affidavit submitted in response to appellees' motion for summary *Page 22 
judgment. By way of background, appellant, in responding to appellees' motion for summary judgment, filed a 38-page affidavit, containing 108 paragraphs. Appellees subsequently filed a motion to strike the affidavit, arguing that much of the averments were conclusory, based upon lack of personal knowledge, and that portions of the affidavit contradicted appellant's earlier deposition testimony. The trial court overruled the motion to strike as moot, holding that it was able to decide the motion for summary judgment without considering the paragraphs in dispute (specifically referencing 24 of the 108 total paragraphs at issue).
 {¶ 55} Regardless of whether the trial court erred in denying the motion to strike as moot, this court has, in conducting our de novo review, considered all the averments in the affidavit. Based upon this court's independent review of the record, including the affidavit at issue, we would still conclude there exists no genuine issues of material fact that would prevent summary judgment in favor of appellees on appellant's claims for sex and age discrimination. See Natl. CityBank v. Williams (May 19, 1998), Franklin App. No. 97APG09-1271 (appellate court's de novo review of record on summary judgment rendered harmless any error by trial court in failing to consider materials and arguments raised by appellant).
 {¶ 56} Based upon the foregoing, appellant's three assignments of error are without merit and are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
KLATT and McGRATH, JJ., concur.
[1] Law eventually lost his position with AT T at the end of 2002.
[2] On appeal, appellant does not challenge the trial court's rulings on his claims for age harassment and sexual harassment.
[3] Other Ohio courts have similarly discussed this greater burden. See, e.g., Kirkendall v. Parker Hannifin Corp. (July 12, 1995), Lorain App. No. 94CA005955 ("heavier burden" in RIF situation "is necessary because the normal prima facie case does not take into account `the most common legitimate reasons' for a discharge in a reduction in force situation, the reductions themselves"); Bundy v. Sys. ResearchLaboratories, Inc. (May 3, 1996), Greene App. No. 95-CA-71 ("in a reduction in force termination situation where the employer is cutting positions due to economic necessity, the age discrimination plaintiff who has been terminated `carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons' ").
[4] Appellant has submitted, as supplemental authority, this court's recent decision in Hall v. Banc One Mgt. Corp., Franklin App. No. 04AP-905, 2006-Ohio-913, reversing a trial court's granting of summary judgment in favor of the defendant-employer, in which the employer had argued the plaintiff was eliminated under a RIF. The facts ofHall, however, are distinguishable from the instant case. InHall, this court, in considering the elements of the prima facie case, held that the trial court erred in concluding that another employee did not replace the plaintiff. Further, in finding that genuine issues of fact remained regarding the employer's non-discriminatory reasons for the RIF, this court found significant that: (1) the plaintiff was the only employee terminated; (2) the employer had no written plan to restructure or refocus government relations or reduce government relations costs through a RIF; (3) prior to terminating the plaintiff, no other employee had drafted documents proposing a new focus or structure for government relations; (4) the employer did not consider terminating other government relations personnel; and (5) after plaintiff's termination, the government relations budget increased rather than decreased. This court also found "undisputed evidence" demonstrating that the appellant in Hall was qualified to lead the Government Relations Group, both before and after its purported refocus to increase its reliance on industry associations for lobbying and to decrease its emphasis on BOPAC. Id., at ¶ 36. *Page 1