| | |
|---|---|
| JAMAL FEERASTA | Case No. 2020-00617JD |
| Plaintiff | Judge Patrick E. Sheeran |
| v. | Magistrate Robert Van Schoyck |
| | <u>DECISION</u> |
| THE UNIVERSITY OF AKRON | |
| Defendant | |

{¶1} On September 10, 2021, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B).  Plaintiff filed a response on September 23, 2021.  Defendant filed a reply on October 7, 2021.  Plaintiff filed a sur-reply, with leave of court, on November 29, 2021.  The motion is now before the court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4(D).

{¶2} Civ.R. 56(C) states, in part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

*See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶3} There is no dispute that, as set forth in the complaint, plaintiff began working for defendant in 2000 and later became a tenured professor in the Bachelor of Organizational Supervision program within the Business and Information Technology Department. (Complaint, ¶ 3, 5, 9.) Plaintiff went on medical leave during the spring semester of 2020 to undergo cardiac surgery. (*Id.* at ¶ 11.) On July 16, 2020, plaintiff was notified that he was among 96 full-time faculty members whose employment was terminated by defendant as part of a reduction in force (RIF). (*Id.* at ¶ 16, 20.) Plaintiff, who was 68 years old at the time he filed his complaint, claims that the termination of his employment constituted unlawful discrimination on the basis of both age and disability.

**AGE DISCRIMINATION**

{¶4} Count I of the complaint raises a claim of age discrimination in violation of R.C. 4112.01, et seq.

{¶5} "R.C. 4112.02(A) provides that '[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.'" *Nelson v. Univ. of Cincinnati*, 2017-Ohio-514, 75 N.E.3d 1304, ¶ 31 (10th Dist.). Additionally, "[t]he Supreme Court [of Ohio] has explained, 'we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.'" *Brown v. Corr. Reception Ctr.*, 2020-Ohio-684, 146 N.E.3d 621, ¶ 21 (10th Dist.), quoting *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164 (1991).

{¶6} "In order to prevail in [an] employment discrimination case, [a plaintiff] must prove discriminatory intent and may establish such intent through either direct or indirect

methods of proof." *Ray v. Ohio Dept. of Health*, 2018-Ohio-2163, 114 N.E.3d 297, ¶ 23 (10th Dist.). In this case, plaintiff maintains that discriminatory intent may be established through the indirect method of proof. (Response, p. 8).

{¶7} A plaintiff "may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) * * *." *Brehm v. MacIntosh Co.*, 10th Dist. Franklin No. 19AP-19, 2019-Ohio-5322, ¶ 14. "To establish a prima facie case of age discrimination, a plaintiff must show: '(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.'" *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir.2012), quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

{¶8} Ohio courts, "including [the Tenth District Court of Appeals], have held that a RIF 'necessarily requires modification of the indirect method of proof and establishing a prima facie case by modifying the fourth element under * * * *McDonnell Douglas*.'" *Kundtz v. AT&T Solutions, Inc.*, 10th Dist. Franklin No. 05AP-1045, 2007-Ohio-1462, ¶ 21, quoting *Dahl v. Battelle Mem. Inst.*, 10th Dist. Franklin No. 03AP-1028, 2004-Ohio-3884, ¶ 15. Therefore, "in cases of a termination due to a RIF, 'an age discrimination plaintiff carries a greater burden of supporting allegations of discrimination by coming forward with additional evidence, be it direct, circumstantial, or statistical, to establish that age was a factor in the termination.'" *Id.* "The purpose of requiring the plaintiff to introduce additional evidence in RIF cases 'is to ensure "there is a chance that the work force reduction is not the reason for the termination."'" *Pettay v. DeVry Univ., Inc.*, 10th Dist. Franklin No. 19AP-762, 2021-Ohio-1380, ¶ 23, quoting

*Mittler v. OhioHealth Corp.*, 10th Dist. Franklin No. 12AP-119, 2013-Ohio-1634, ¶ 33, quoting *Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672, ¶ 57.

{¶9} "Once a plaintiff establishes a prima facie case of disability discrimination, 'the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken.'" *Dalton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-827, 2014-Ohio-2658, ¶ 27, quoting *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 302, 658 N.E.2d 738 (1996). "The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186-1187 (6th Cir.1996).

{¶10} In its motion for summary judgment, defendant does not dispute that plaintiff is a member of the protected class, that his position was eliminated, and that he was qualified for his position; however, defendant asserts that plaintiff cannot establish the fourth element of the prima facie case because he was neither replaced, nor were substantially younger employees retained by the elimination of his position.

{¶11} Plaintiff, on the other hand, argues that there are circumstances which permit an inference of age discrimination.

{¶12} First, plaintiff cites the testimony of Stan Smith, who served as Acting Chair of the Business and Information Technology Department from approximately February 2020 through June 2020 and thus served as plaintiff's supervisor during that time. According to plaintiff, Smith "was clearly untruthful in his testimony surrounding the reduction in force process", particularly to the extent that he "did not know who his supervisor was" when the RIF occurred. (Response, p. 9.) In his deposition, Smith explained that as Acting Chair he initially reported to Michael Johanyak, who was Acting

Dean of the College of Applied Science & Technology. Smith stated that after Johanyak retired sometime that winter, there were various changes afoot due to a pending reorganization of departments and then he started working from home due to the COVID-19 pandemic and no one ever specifically told him who his new supervisor was; but, he understood that Johanyak was replaced by Interim Chair Sukanya Kemp, he would assume that he was supposed to report to Kemp, and indeed Kemp was the administrator with whom he dealt following Johanyak's retirement. (Smith Depo., pp. 26-31.) Thus, the evidence demonstrates that Smith reported to Kemp after Johanyak's retirement, and, even if Smith was uncertain about Kemp officially being his supervisor, it is not clear how this would make it any more or less likely that the RIF was not the reason for plaintiff's position being abolished.

{¶13} Plaintiff also asserts that "[i]t is challenging to believe" that Smith was not involved in the RIF. (Response, p. 9.) In his deposition, though, Smith denied having any involvement in choosing whose positions would be abolished in the RIF, he denied having any knowledge of the criteria used for those determinations, and, moreover, he stated that he only learned of the RIF from media reports. (Smith Depo., pp. 16-17.) Kemp, in her deposition, also stated that Smith was not a decisionmaker in the RIF process. (Kemp Depo., p. 22.) Joseph Urgo, who served as Interim Provost before becoming Acting Dean of the College of Arts & Sciences in May 2020, testified that he spoke with Kemp about the RIF process, but not Smith. (Urgo Depo., p. 24.) Plaintiff does not identify evidence to contravene Smith, Kemp, and Urgo's testimony in this regard.

{¶14} Plaintiff also asserts that an inference of age discrimination can be drawn from Smith and Kemp questioning him about potentially retiring. In his deposition, plaintiff stated that when he came back from his medical leave and spoke to Smith, Smith asked how he was doing, if he was available to teach, and if he was considering retirement.

(Plaintiff Depo., pp. 24, 56.) As stated earlier, though, the uncontroverted evidence is that Smith was not involved in the decision to abolish plaintiff's position through the RIF. Although Kemp admitted that she may have at some point asked plaintiff if he preferred to retire in lieu of his position being abolished in the RIF (Kemp Depo., p. 23), simple "inquiries into retirement plans do not generally constitute evidence of discrimination". *Anderson v. U.S. Bank Natl. Assn.*, S.D.Ohio No. 2:14-cv-2167, 2016 U.S. Dist. LEXIS 84728, *29 (June 28, 2016), citing *MacDonald v. United Parcel Serv.*, 430 Fed.Appx. 453, 460 (6th Cir.2011), *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir.1997).

{¶15} Plaintiff also argues that there is conflicting evidence about who made the decisions as to which employees would have their positions eliminated in the RIF. In particular, plaintiff contends that the deposition testimony of Kemp and Urgo are inconsistent. Plaintiff notes that Urgo, who served as Provost until May 2020, when he became Acting Dean of the College of Arts & Sciences, was asked "[w]ho would have been in charge of the RIFs involving BOS", and he replied that Kemp "oversaw that process." (Urgo Depo., p. 23.) Plaintiff further notes that Urgo said he spoke to Kemp about the names of those who would lose their positions in the RIF and, when asked if he was simply informed of that information or was part of the approval process, he said he was only informed. (*Id.*) Plaintiff then notes that when Kemp was asked in her deposition if she would be surprised to learn that Urgo indicated she was "involved in choosing the names", she said she would be very surprised. (Kemp Depo., p. 25)

{¶16} In fact, consistent with Urgo's testimony, Kemp explained in her deposition that she was in charge of conducting an RIF analysis in which she provided information about the academic programs and faculty under her authority within the College of Applied Science & Technology, including plaintiff, and she supposed her analysis was used in the creation of the final list of faculty eliminated in the RIF. (*Id.* at pp. 14-15, 25-27, 32.) Kemp stated that she conducted this analysis in June 2020, at which time Urgo

was no longer the Interim Provost over her but was instead an Acting Dean of the College of Arts & Sciences. (*Id.* at p. 17; Urgo Depo., p. 13.) Insofar as Urgo stated that Kemp discussed with him the names of faculty affected by the RIF, there is no dispute that the college overseen by Kemp was being eliminated and its departments were being reorganized into other colleges, including the College of Arts & Sciences. Indeed, Kemp testified that she shared with Urgo the information she compiled about the programs that were moving to the College of Arts & Sciences. (Kemp Depo., p. 33.) As to Kemp's denial of having decided which faculty would be eliminated in the RIF, she testified that her analysis was limited to providing information and that the actual decisions on which faculty were to be eliminated were made by other university officials, and, ultimately, the board of trustees (*Id.* at pp. 16, 20, 25, 29.) Even if there was some inconsistency in Kemp and Urgo's testimony, plaintiff has not shown how it points toward age discrimination.

{¶17} Similarly, while plaintiff submitted with his sur-reply copies of email messages from Kemp indicating that her involvement in the RIF process included preparing a list of faculty whom she proposed to be eliminated, she admitted in her deposition that she supposed her input was indeed used in defendant's adoption of a final RIF list, and even if there is some inconsistency between the email messages and her deposition testimony, plaintiff does not show how this points to age discrimination rather than the RIF as the reason for plaintiff's position being eliminated.

{¶18} Plaintiff also points to a document obtained in discovery listing every employee whose position was abolished in the RIF, arguing that when reviewing the age of each employee "under 15% of the reduction in force list was under 40." (Response, p. 5; Plaintiff Affidavit, Ex. 1.) The Tenth District Court of Appeals has consistently held, however, "that statistical evidence, in order to be of probative value, must 'account for variations among employees' with respect to variables such as 'skill level, job function, and education.'" *Pettay*, 2021-Ohio-1380, at ¶ 26, quoting *Dahl*,

2004-Ohio-3884, at ¶ 18.   For example, under the facts in *Boggs v. Scotts Co.*, 10th Dist. Franklin No. 04AP-425, 2005-Ohio-1264, ¶ 18, the appeals court found "the appellant's statistical evidence, which looked only at 'the number of persons above and below the age of 40 who were selected for termination,' and which failed to consider other non-discriminatory business reasons, was not probative of whether the employer decided to terminate her based solely on age."   *Pettay* at ¶ 27.   Here too, the unelaborated statistic identified by plaintiff is insufficient to establish a material issue of fact going toward plaintiff's prima facie case.  *See Id.* at ¶ 48.

{¶19} Plaintiff also refers to an averment in an affidavit he submitted in response to the motion for summary judgment, being that when the Bachelor of Organizational Supervision program moved to the School of Communication as part of the reorganization in 2020, "at least one individual within the School of Communication who was retained by the University of Akron began teaching a BOS course and was younger than me."  (Plaintiff Affidavit, ¶ 3.)  Plaintiff does not point to material facts to further explain or substantiate this assertion, including the age of the unnamed individual. Vague, self-serving statements do not substantiate plaintiff's allegation.  *Pierce v. Brown Publishing Co.*, 12th Dist. Fayette No. CA2006-07-027, 2007-Ohio-1657, ¶ 15. "An employee may not rely upon bare assertions that he was replaced by a substantially younger individual as evidence going to this question of fact."  *Id.*, quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶20} Accordingly, plaintiff has not identified circumstantial evidence sufficient to meet the fourth element of his prima facie case.  Even if plaintiff could establish a prima face case, "Ohio courts have recognized that a reduction in force due to economic necessity can be a legitimate, nondiscriminatory reason for an employee's discharge." *Lascu v. Apex Paper Box Co.*, 8th Dist. Cuyahoga No. 95091, 2011-Ohio-4407, ¶ 25.  In this case, defendant indeed cites the RIF as the reason for plaintiff's discharge.

{¶21} In an affidavit, Kemp avers, in part, that she "had been aware that UA had financial issues, from at least the academic year of 2018-2019, and in the end of May 2020, I became aware that UA would be doing a reduction-in-force ("RIF") in order to address the financial hardships it faced." (Kemp Affidavit, ¶ 4.) Similarly, Urgo stated in his deposition that soon after he joined defendant in November 2019, he learned that defendant had financial problems resulting from declining enrollment, and in May 2020 defendant's president told him there would be an RIF. (Urgo Depo., pp. 11-12.) As Urgo explained, each Dean was tasked with reducing their budget by a certain amount, and faculty salaries were the biggest part of their budgets. (*Id.* at pp. 15-16.) Kemp states in her affidavit that in her role as Dean of the College of Applied Science and Technology, she was involved in the RIF process by compiling information on "every department, including student enrollment and retention rates, financial status, as well as input on faculty and nonfaculty positions within [the college] in regards to program viability." (Kemp Affidavit, ¶ 5.) According to Kemp, she "provided input on positions that could be abolished for cost-saving measures—not people. The information provided to the administration and UA about positions that could be abolished did not take into account the age or disability status of any employee, including [plaintiff]." (*Id.* at ¶ 6.) Kemp goes on to state:

> The Bachelor of Organizational Supervision ("BOS") was among those programs that I reviewed at the behest of UA. The BOS program's enrollment numbers had been trending downward for the past five years, and with the UA's reorganization of the BOS program into the College of Communications it was determined that the two full-time professor positions within the program were appropriate for inclusion on the RIF list.

(*Id.* at ¶ 7.) There is no dispute that the only other full-time professor in the Bachelor of Organizational Supervision program besides plaintiff was also eliminated in the RIF. Higher-level officials, and, ultimately, the board of trustees made the decisions on which

faculty were included in the RIF.  (Kemp Depo., pp. 16, 29.)  It appears to be undisputed that the positions of 178 employees were eliminated in the RIF, including 96 full-time faculty.

{¶22} From the evidence presented, reasonable minds must conclude that defendant's university-wide RIF was conducted out of economic necessity and constituted a legitimate, nondiscriminatory reason for plaintiff's position being eliminated.

{¶23} "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).  "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400, fn.4 (6th Cir.2009).

{¶24} Plaintiff does not dispute "that the university may have had to make some changes, but [plaintiff] was chosen because of his age * * *."  (Response, p. 10.)  As evidence, plaintiff refers again to perceived inconsistencies between the deposition testimony of Kemp, Smith, and Urgo, which have already been addressed.  Plaintiff refers to the evidence of defendant's financial issues as "[b]lanket allegations", but the uncontroverted evidence is that defendant indeed faced a significant budget shortfall. (*Id.*)

{¶25} Plaintiff also asserts that "[d]efendant's own admissions that more senior employees would need to be terminated first, cuts against" defendant's proffered reasoning.  (*Id.*)  According to the deposition testimony of Urgo, however, while the faculty eliminated in the RIF tended to have more seniority, they were not necessarily "older". (Urgo Depo., p. 17.)  And, in an RIF the decision to discharge a qualified, older employee is not inherently suspicious, but "is readily explainable in terms of the

employer's economic situation."  *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 896 (6th Cir.1997).  The federal Age Discrimination in Employment Act "only bars discrimination on account of age; it does not place on employers an affirmative obligation to retain older workers whenever a reduction in staff becomes necessary."  *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir.1991).

{¶26} In short plaintiff has not produced evidence from which a reasonable finder of fact could doubt defendant's explanation for including plaintiff among the 96 full-time faculty members whose positions were eliminated.

{¶27} Accordingly, defendant is entitled to judgment on plaintiff's claim of age discrimination.

## DISABILITY DISCRIMINATION

{¶28} Count II of the complaint raises a claim of disability discrimination in violation of R.C. 4112.01, et seq.

{¶29} "Disability discrimination in employment is prohibited by R.C. 4112.02 which provides, in pertinent part, that '[i]t shall be an unlawful discriminatory practice * * * [f]or any employer,' because of the 'disability * * * of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.'"  *Dalton*, 2014-Ohio-2658 at ¶ 24, quoting R.C. 4112.02(A).

{¶30} "The Supreme Court of Ohio has explained that discrimination actions under federal and state law each require the same analysis."  *Ray v. Ohio Dept. of Health*, 2018-Ohio-2163, 114 N.E.3d 297, ¶ 22 (10th Dist.), citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981); *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164 (1991).  "Ohio courts may look to both

federal and state courts' statutory interpretations of both federal and state statutes when determining the rights of litigants under state discrimination laws." *Id.*

{¶31} "[A] plaintiff may establish a prima facie case of * * * discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996), paragraph one of the syllabus. "To establish a prima facie case of disability discrimination under R.C. 4112.02, a plaintiff must show that: (1) the employee was disabled, (2) that the employer took adverse employment action against the employee, which was caused, at least in part, by the employee's disability; and that (3) despite the disability, the employee can safely and substantially perform the essential functions of the job, with or without a reasonable accommodation." *Sheridan v. Jackson Twp. Div. of Fire*, 10th Dist. Franklin No. 08AP-771, 2009-Ohio-1267, ¶ 5.

{¶32} "Once a plaintiff establishes a prima facie case of disability discrimination, 'the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken.'" *Dalton*, 2014-Ohio-2658, at ¶ 27, quoting *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 302, 658 N.E.2d 738 (1996). "The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times." *Monette*, 90 F.3d at 1186-1187.

{¶33} Defendant argues that plaintiff cannot establish the first element of a prima facie case inasmuch as he was not disabled for purposes of a disability discrimination claim.

{¶34} "A disability is a 'physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or

mental impairment.'" *Hilbert v. Ohio Dept. of Transp.*, 2017-Ohio-488, 84 N.E.3d 301, ¶ 49 (10th Dist.), quoting R.C. 4112.01(A)(13).

{¶35} Under plaintiff's theory of disability discrimination, "[t]he question is whether [he] was disabled when he was terminated", and, according to plaintiff, "at the time [his] employment was terminated, he most certainly had a cognizable disability." (Response, pp. 11-12.)

{¶36} Plaintiff alleged in his complaint that he "is a member of a protected class, as he suffered from a medical condition and had recently received and was recovering from a major surgery related to the condition." (Complaint, ¶ 38.) More specifically, in responses to interrogatories plaintiff identified his disability as a heart "[v]alve replacement and bypass", and when asked to identify how he was substantially limited in a major life activity he answered "[w]as required to take semester off." (Motion, Ex. C-1, p. 5.)

{¶37} Consistent with that, plaintiff testified in his deposition that he took the spring semester off to undergo the procedure, which was performed on February 6 or 7, 2020. (Plaintiff Depo., pp. 10, 30.) According to plaintiff, the procedure went "very smooth", he subsequentlly has more energy, is more active, and is "absolutely" thriving. (*Id.* at p. 31.) Plaintiff stated that after his doctor cleared him to return to work, he got in touch with Smith about planning for summer and fall semester classes and let him know he was ready to teach again. (*Id.* at pp. 13-15, 26.) As plaintiff recounted, he was indeed assigned to teach that summer and fall, although plans were in limbo due to the pending reorganization of colleges. (*Id.* at pp. 15, 24.) Plaintiff stated that he did teach in the summer semester and it "was not a problem". (*Id.* at p. 39.)

{¶38} There is no dispute that on or about July 16, 2020, plaintiff was notified that his position was being eliminated in the RIF, and, according to defendant's written notice to plaintiff, his last day of full-time employment was August 21, 2020. (Kemp

Affidavit, Ex. A-3.)  Plaintiff has continued to teach part-time for defendant since then, up to the present time.  (Plaintiff Depo., pp. 35, 39.)

{¶39} While plaintiff claims that he was disabled at the time his position was eliminated, from the evidence presented it can only be concluded that the extent of his impairment was to limit him from teaching during spring semester.  Plaintiff has failed to demonstrate that he was limited in a major life activity at the time his position was eliminated.  *See Stearman v. Ferro Coals, Inc.*, 751 Fed.Appx. 827, 831 (6th Cir.2018) (employee who suffered heart attack and prostate cancer but came back to work "'full steam' after treatment", had no restriction in his ability to perform his job, and "had no serious health issues at the time of his termination" was not disabled under ADA standards).

{¶40} Finally, while he does not specifically raise such a theory, even if plaintiff could be understood as arguing he was at least "regarded as" disabled, he has not identified evidence tending to show any mistaken belief that he had a physical impairment.  Plaintiff emphasizes that Kemp and Smith "were aware of his medical condition."  (Response, pp. 6, 11.)  However, "[g]eneral knowledge or notice about an employee's medical treatment or condition, alone, is insufficient to overcome summary judgment on a claim that an employer 'regarded' the employee as disabled.  *Wingfield v. Escallate, LLC*, N.D.Ohio No. 5:12CV2620, 2014 U.S. Dist. LEXIS 139885, *16 (Sept. 30, 2014).  Plaintiff also asserts that Smith "questioned his ability to teach following the medical procedure", but in his deposition plaintiff stated that Smith merely asked him, when he was returning from leave (amid the outset of the COVID-19 pandemic) "how are you doing" and "are you ready to teach?"  (Response, p. 6; Plaintiff Depo., p. 56.)  And, as stated earlier, Smith was not involved in the RIF process.

{¶41} Accordingly, defendant is entitled to judgment on plaintiff's claim of disability discrimination.

**CONCLUSION**

{¶42} Based upon the foregoing the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

PATRICK E. SHEERAN
Judge

[Cite as *Feerasta v. Univ. of Akron*, 2022-Ohio-653.]

| | |
|---|---|
| JAMAL FEERASTA | Case No. 2020-00617JD |
| Plaintiff | Judge Patrick E. Sheeran<br>Magistrate Robert Van Schoyck |
| v. | |
| THE UNIVERSITY OF AKRON | <u>JUDGMENT ENTRY</u> |
| Defendant | |

{¶43} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment.  For the reasons set forth in the decision filed concurrently herewith, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.  As a result, defendant's motion for summary judgment is GRANTED and judgment is hereby rendered in favor of defendant.  All previously scheduled events are VACATED.  Court costs are assessed against plaintiff.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.


PATRICK E. SHEERAN
Judge


Filed January 25, 2022
Sent to S.C. Reporter 3/7/22