JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Harry L. Harris, appeals the decision of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of appellee, Greater Cleveland Regional Transit Authority. For the reasons stated herein, we affirm.
 {¶ 2} Harry Harris was employed by the Greater Cleveland Regional Transit Authority ("RTA") as a bus operator for more than twenty years. On April 4, 2002, he was off duty and was traveling on the rapid train from the Tower City station to the West Park station. Another RTA employee, Tina L. Myles, also was on this rapid train.
 {¶ 3} According to a statement provided by Myles, during the rapid ride, Harris began to walk to the front of the train, but a male passenger who was wearing headphones was blocking his way. Myles heard Harris tell the passenger to "move out of his way," and the passenger moved and made a comment to Harris. When the train reached the West Park station, Myles, Harris, and the passenger all disembarked the train. Myles observed Harris running down the stairs behind the passenger and using profanities. Myles went after them and found that Harris had trapped the passenger against a wall, and that Harris was yelling profanities at the passenger and pointing a finger in his face. At that point, Myles identified herself to Harris as an RTA employee and told Harris to "leave him alone" and "we do not treat passengers this way." She indicated that Harris turned around and started to yell profanities at her and that Harris refused to identify himself. Myles reported the *Page 4 
incident, and RTA terminated Harris.
 {¶ 4} According to Harris, as he tried to make his way to the front of the train, the passenger elbowed him and cursed at him. When he was questioning the passenger about his actions, Myles grabbed him by the arm. Harris thought that Myles was with the passenger. He admitted using profane language toward Myles.
 {¶ 5} RTA claimed that Harris was terminated for violating company rules. Article II of the Employee Performance Code ("the Code") requires employees to be "courteous, respectful, helpful and cooperative" and to treat "coworkers with respect, regardless of job classification." The Code further specifies that violations include the use of "profane or obscene language, gestures or threats" and "offensive remarks." The Code states that "immediate discharge" could result from offenses such as "acts of immoral, disorderly, or abusive conduct" or the use of "overt force" against "another employee" or to the "public."
 {¶ 6} As a member of the Amalgamated Transit Union Local 268, Harris's employment was governed by the collective bargaining agreement negotiated between the union and RTA. According to Part I, Article II, Section 2 of the agreement, RTA can discharge employees for "just cause."
 {¶ 7} Following his termination, Harris filed a grievance. Eventually, the matter came to be heard before a neutral arbitrator.
 {¶ 8} The arbitrator found that Harris's use of profane language toward a passenger and an employee violated RTA's rules. However, in light of the *Page 5 
circumstances surrounding the incident, the arbitrator was "unconvinced that the grievant's actions constituted just cause for his discharge." Instead, the arbitrator concluded that Harris had acted in a disorderly fashion, which warranted discipline in the form of a suspension. The arbitrator modified Harris's discharge to a thirty-day, unpaid disciplinary suspension and reinstated Harris with full seniority and back pay/benefits.
 {¶ 9} Harris subsequently filed a complaint against RTA on October 27, 2005, claiming that he was at all relevant times employed by RTA and that he was wrongfully discharged and received discriminatory treatment from RTA. Harris's complaint raised claims of race discrimination in violation of R.C. 4112.02 and R.C. 4112.99, violation of public policy, breach of implied contract, promissory estoppel, and intentional infliction of emotional distress.
 {¶ 10} RTA filed a motion for summary judgment, which was granted by the trial court. Harris has appealed the trial court's ruling, raising one assignment of error for review: "The trial court erred in granting summary judgment when genuine issues of material fact existed as to appellant's claims."
 {¶ 11} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga Cty. Community College, 150 Ohio App.3d 169,2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears *Page 6 
from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel.Dussell v. Lakewood Police Dept, 99 Ohio St.3d 299, 300-301,2003-Ohio-3652, citing State ex rel. Duganitz v. Ohio Adult ParoleAuth., 77 Ohio St.3d 190, 191, 1996-Ohio-326.
 {¶ 12} Several of Harris's claims fail as a matter of law because Harris was a member of a union whose employment was governed by a collective bargaining agreement ("CBA"). The CBA limited the power of RTA to terminate Harris and, as a result, took him outside the context of employment at-will. See Haynes v. Zoological Soc. of Cincinnati
(1995), 73 Ohio St.3d 254; Williams v. W. Reserve Transit Auth., Mahoning App. No. 06-MA-137, 2007-Ohio-4747; Urban v. Osborn Mfg.,165 Ohio App.3d 673, 2006-Ohio-1080.
 {¶ 13} The Ohio Supreme Court specifically held in Haynes,73 Ohio St.3d 254, that a union employee with terms of employment governed by a collective bargaining agreement is barred from asserting a wrongful termination claim on the basis of public policy. See, also, Edwards v.I. Schumann Co., Cuyahoga App. No. 88528, 2007-Ohio-3067. Therefore, Harris's public policy claim fails as a matter of law.
 {¶ 14} Also, Harris's claim for breach of implied contract fails because "Ohio law does not permit implied covenants in a contract in relation to any matter specifically covered by the written terms."Haren v. Superior Dairy, Inc., Stark App. *Page 7 
No. 2003-CA-00331, 2004-Ohio-4436, citing Hamilton Ins. Servs. v.Nationwide Ins. Co., 86 Ohio St.3d 270, 1999-Ohio-162. Likewise, as this court has previously indicated, "[i]t is generally recognized that an express contract and an implied contract cannot coexist with reference to the same subject matter." Salkin v. Case Western Reserve Univ., Cuyahoga App. No. 88041, 2007-Ohio-1139. Because Harris is subject to the terms of the CBA, which expressly provides that RTA may discipline or discharge employees for "just cause" and provides a grievance procedure, Harris's implied contract claim fails as a matter of law. Similarly, Harris's promissory estoppel claim is preempted by the CBA. See Haren, supra.
 {¶ 15} We proceed to address Harris's remaining claims of race discrimination and intentional infliction of emotional distress. In order to prevail on a claim of race discrimination through circumstantial evidence under R.C. Chapter 4112, a plaintiff must make a prima facie showing that he or she (1) is a member of the protected class; (2) is or was qualified for the position and performed it satisfactorily; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated non-minority employees for the same or similar conduct. See Plumbers Steamfitters JointApprenticeship Commt. v. Ohio Civil Rights Comm. (1981),66 Ohio St.2d 192, 197; see, also, Texas Dept. of Community Affairs v. Burdine (1981),450 U.S. 248, 252-53, citing McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 802. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse *Page 8 
employment action instituted by the employer. Id. If the defendant makes this showing, the burden shifts once again to the plaintiff, who then is given the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is merely a pretext for impermissible race discrimination. Id. The ultimate burden of persuasion remains at all times with the plaintiff. Id.
 {¶ 16} In this case, the parties dispute whether Harris satisfied the fourth part of his prima facie case-that he was treated differently than similarly situated non-minority employees for the same or similar conduct. The only evidence submitted by Harris in this regard was his own affidavit in which he makes the assertion that "similarly situated white employees who had committed similar alleged work rule infractions were not terminated from employment by [RTA]." This conclusory statement is unsubstantiated by any direct or indirect evidence. Harris's bare assertions simply are not enough to make a prima facie case of discrimination. See Lennon v. Cuyahoga Cty. Juvenile Court, Cuyahoga App. No. 86651, 2006-Ohio-2587.
 {¶ 17} Even if we were to assume that Harris had established a prima facie case of discrimination, Harris has failed to come forward with any evidence to show that RTA's proffered reason for his discharge was pretextual. In this case, RTA proferred a legitimate, nondiscriminatory reason for Harris's discharge-that Harris was terminated for violating company rules.
 {¶ 18} As RTA provided a legitimate, nondiscriminatory reason for the *Page 9 
discharge, the burden was upon Harris to present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination. See Manofsky v. Goodyear Tire Rubber Co. (1990),69 Ohio App.3d 663, 668. The employee's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge. Wagner v. Allied Steel Tractor Co. (1995),105 Ohio App.3d 611, 617. Mere conjecture that the employer's proffered reason is pretext is insufficient to withstand a summary judgment motion.Surry v. Cuyahoga Community College, 149 Ohio App.3d 528,2002-Ohio-5356. The employee must produce some evidence that the employer's proffered reasons were factually untrue. Id.
 {¶ 19} Here, although Harris offered a different account of the events from RTA, he admitted using profanities. As the arbitrator's decision found, "[i]n the instant case, there is no dispute that the grievant directed profane language toward both a passenger and an [RTA] employee, manager, Tina Myles. Accordingly, * * * the grievant's use of profane language constituted a violation of [RTA's] rules which prohibit such conduct." The arbitrator further found that Harris had "acted in a disorderly fashion and used profanity toward Myles, which actions warranted discipline in the form of a suspension."
 {¶ 20} Harris has not presented any evidence that could establish that RTA discharged him for any reason other than having violated company rules. We find that Harris has failed to create a genuine issue of material fact with respect to *Page 10 
pretext. Accordingly, the trial court did not err when it granted summary judgment to RTA on Harris's discrimination claim.
 {¶ 21} Lastly, we consider Harris's claim of intentional infliction of emotional distress. A person is liable for intentional infliction of emotional distress if he "by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen Helpers of Am. (1983), 6 Ohio St.3d 369, syllabus. In the case at bar, Harris was discharged for violating company rules, which specifically stated that an employee could be immediately discharged for disorderly or abusive conduct or the use of overt force against another employee or to the public. The conduct Harris complains of falls short of the extreme or outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Accordingly, we find that the trial court properly granted RTA summary judgment on that claim.
 {¶ 22} Harris's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
 COLLEEN CONWAY COONEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR *Page 1