[Cite as *Brown v. Woodmere*, 2012-Ohio-89.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97043**

## MASAI BROWN

PLAINTIFF-APPELLANT

vs.

## VILLAGE OF WOODMERE, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:
AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-722343

**BEFORE:**  Rocco, J., Jones, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**  January 12, 2012

**ATTORNEY FOR APPELLANT**

Nicholas A. Papa
P.O. Box 391055
Cleveland, Ohio   44139

**ATTORNEY FOR APPELLEES**

John D. Latchney
Tomino and Latchney
803 E. Washington Street
Suite 200
Medina, Ohio   44256

KENNETH A. ROCCO, J.:

{¶ 1}  Plaintiff-appellant Masai Brown appeals from orders the trial court entered in favor of defendant-appellee the Village of Woodmere on his claims of wrongful discharge and racial discrimination.

{¶ 2}  Brown argues the pleadings did not demonstrate he could prove no set of facts to support his wrongful discharge claim.   He further argues summary judgment on his racial discrimination claim was unwarranted.

{¶ 3}  In light of the record, this court disagrees.   Consequently, the trial court's orders are affirmed.

{¶ 4}  Brown filed this action on March 25, 2010.   In his complaint against Woodmere, he alleged in pertinent part as follows:

**{¶ 5}** Brown was employed as a police officer by Woodmere pursuant to the village charter, Art. IV, Section 5(B). In January, 2006, he was disciplined for his use of the "Mayor's Court computer" for personal matters. At that time, he became aware the village had an "Electronic Use" ordinance.

**{¶ 6}** In May 2008, Brown received notice from the village mayor that he "was being charged" with improper use of the "Sergeant's computer." The charges had been brought due to information provided by another police officer, Sergeant Daniel Cisek.

**{¶ 7}** Due to Cisek's installation of "spyware" on the sergeant's computer, which the "Chief of Police viewed as a crime," Cisek had the ability to "access any website utilized by any [sergeant] using that person's passwords without that person's knowledge." The "mayor told the police chief to stop [an] investigation against Cisek * * *," but the mayor initiated disciplinary proceedings against Brown without first requesting a police investigation of the charges against him. Brown received notice that the mayor would hold a "pre-termination" hearing on May 23, 2008. The hearing proceeded in Brown's absence.

**{¶ 8}** Upon concluding the hearing, the mayor decided to terminate Brown from his position as a police officer for five reasons, viz., 1) violation of the village's electronic use policy; 2) unauthorized use of village property or equipment; 3) failure to observe departmental rules and village policies; 4) conduct unbecoming a police officer; and 5) dishonesty.

{¶ 9}  Brown exercised his right to appeal his termination to the village council pursuant to Woodmere Charter Art. IV, Section 5(C)(1).  The village council held a hearing on his appeal.  At this hearing, the village council learned that, although other officers and village officials also used the village computer for personal matters, the electronic use policy was enforced only "against Brown."

{¶ 10} The mayor told the council that the charge of conduct unbecoming a police officer was based upon the discovery of "sexually explicit material on the Sergeant's computer."  The mayor indicated that she had no "proof" Brown had been the person who placed "sexually explicit photos" on that computer.  Council upheld the mayor's decision to terminate Brown's employment.

{¶ 11} Based upon the foregoing facts, Brown presented three causes of action against Woodmere.  In the first count of his complaint, he claimed his termination from employment was based on racial discrimination.  He claimed he was terminated because the village sought to bolster its defense to a federal lawsuit in which it had been charged with reverse discrimination.

{¶ 12} In the second count of his complaint, Brown presented a claim for wrongful discharge in violation of his right to due process and "sound public policies."  He further asserted the village lacked "legitimate business justifications" for terminating his employment.

**{¶ 13}** Brown's third count presented a claim for "common law wrongful discharge." He asserted that he was terminated "without cause."

**{¶ 14}** The village filed an answer to Brown's complaint. In pertinent part, the village made the following admissions: 1) Brown was employed as a police officer by Woodmere pursuant to the village charter, Art. IV, Section 5(B); 2) in January, 2006, he was disciplined for his use of the "Mayor's Court computer" for personal matters; 3) at that time, he became aware the village had an "Electronic Use" ordinance; 4) in May 2008, Brown received notice from the village mayor that he was being charged with improper use of the "Sergeant's computer"; 5) Brown received notice that the mayor would hold a disciplinary "pre-termination" hearing on May 23, 2008; 6) the hearing proceeded in Brown's absence; 7) upon concluding the hearing, the mayor decided to terminate Brown from his position as a police officer for the five reasons Brown listed in his complaint; 8) Brown exercised his right to appeal his termination to the village council pursuant to Woodmere Charter Art. IV, Section 5(C)(1); and, 9) the village council held a hearing on his appeal before upholding the mayor's decision.

**{¶ 15}** The village denied the other pertinent allegations of Brown's complaint and asserted several defenses to his claims. The village asserted as follows:

**{¶ 16}** Brown was not an "at will" employee. The United States Department of Justice had investigated Brown's actions, and had concluded Brown "used the Police

Department computer to access/display pornographic images, including displays of [Brown's] genitalia and nude women."

{¶ 17} The village further asserted that Brown's pre-termination hearing originally had been scheduled for May 19, 2008 but it was continued to May 23, 2008, at his request and that he had the opportunity to attend and present evidence; the village council heard his appeal at a full and complete post-termination hearing; and the village mayor, who was of the same race as Brown, had legitimate non-discriminatory reasons for terminating Brown's employment. The village also asserted no common law action for wrongful discharge existed.

{¶ 18} Soon after filing its answer to Brown's complaint, the village filed a motion for judgment on the pleadings as to Brown's claims for wrongful discharge. Brown submitted no brief in opposition to the motion.

{¶ 19} On September 16, 2010, the trial court granted the village's motion. The trial court noted that only Brown's claim for racial discrimination remained.

{¶ 20} On May 2, 2011, Woodmere filed a motion for summary judgment on Brown's remaining claim. Woodmere argued Brown could not produce evidence to support the elements of his claim. In support for its argument, Woodmere relied upon portions of deposition testimony that it filed separately with the trial court.

{¶ 21} Brown failed to respond to Woodmere's motion. On June 14, 2011, the trial court granted Woodmere's motion for summary judgment.

{¶ 22} Brown filed a timely appeal from the trial court's final order.   He presents two assignments of error.

{¶ 23} "I.   The trial court's granting of the defendant, Village of Woodmere's, motion for judgment on the pleadings on Count II was in error where the plaintiff could prove a set of facts to support his claim for wrongful discharge.

{¶ 24} "II.   The trial court erred when it granted Woodmere's motion for summary judgment on the issue of racial discrimination."

{¶ 25} Brown argues in his first assignment of error that the pleadings showed Woodmere violated a "clear public policy" when it terminated his employment, because it failed to follow its own "rules and procedures" in firing him.   Based on this argument, he contends the trial court improperly granted Woodmere's motion for judgment on the pleadings with respect to his claim for wrongful discharge in Count 2 of his complaint.[1] This court disagrees.

{¶ 26} Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."   Such motions are used to resolve questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 1996-Ohio-459, 664 N.E.2d 931.   The Ohio Supreme Court further noted that, pursuant to Civ.R. 12(C), "dismissal is appropriate where a court

---

[1]Brown concedes the trial court's decision on Count 3 of his complaint was correct.

(1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." Id.

{¶ 27} Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. Id. The appellate court's review of decisions on Civ.R. 12(C) motions is de novo. *Citicasters Co. v. Bricker & Eckler, L.L.P.*, 149 Ohio App.3d 705, 708, 2002-Ohio-5814, 778 N.E.2d 663.

{¶ 28} "The origin of the tort of wrongful discharge in violation of public policy is the Ohio Supreme Court's decision in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. *Greeley* provides that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason prohibited by statute. However, a *Greeley* cause of action is available *only to at-will employees * * * *." *Surry v. Cuy. Cty. College*, 149 Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91, ¶49. (Emphasis added.)

{¶ 29} In this case, the pleadings demonstrated that Brown was not an "at-will employee." Brown alleged that, in order to fire a village police officer, Woodmere's charter required the mayor to follow a procedure. *Harris v. Greater Cleve. Transit Auth.*, Cuyahoga App. No. 89541, 2008-Ohio-676, ¶12.

{¶ 30} Brown further alleged that Woodmere complied with the due process procedure set forth in its charter. [2] Woodmere admitted Brown's allegations. Consequently, no factual issues existed with respect to his claim of wrongful discharge, and it failed as a matter of law. Id., ¶13.

{¶ 31} Brown's first assignment of error, therefore, is overruled.

{¶ 32} Brown argues in his second assignment of error that summary judgment on his racial discrimination claim was inappropriate. Once again, this court disagrees.

{¶ 33} Appellate review of a trial court's decision on a motion for summary judgment also is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105,

---

[2] The pertinent provisions of Article IV, Section 5 of the village charter provide:

"(B) * * * [S]ubject to such confirmation as may be required herein or by the ordinance of Council, the Mayor shall have the power to appoint and promote any officer or employee of the Municipality, subject to the approval of Council, except those required by this Charter to be elected. A vote of five (5) members of Council shall be necessary to reverse the Mayor's action.

"(C) The Mayor shall have the right to discipline and terminate the employment of any officer or employee referred to in Section 5(B) in the following manner:

"(1) With respect to the Police Chief, police officers and patrolmen, to discharge from employment, suspend, transfer, reduce in rank or otherwise discipline.

"* * * Said action shall be final unless the person so disciplined requests a review of the action in writing to the Council President within ten (10) days of the effective date of the Mayor's action.

"The request for review shall contain in addition all points on which the employee relies in support of his or her claim and shall be placed on the agenda for the meeting of Council next following the expiration of such ten-day period which may be attended by the person requesting the review. A vote of five (5) members of Council shall be necessary to reverse the Mayor's action.

"(D) Except as otherwise specifically provided in subparagraph (C)(1) all actions taken pursuant to Section 5(C) shall be final and conclusive, and no right of appeal

1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. La Pine Truck Sales & Equipment* (1998), 124 Ohio App.3d 581, 706 N.E.2d 860. The court applies the following test:

**{¶ 34}** "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201.

**{¶ 35}** The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies that burden, the nonmoving party "*may not rest upon the mere allegations* or denials *of the party's pleadings*, but the party's response, by affidavit or as otherwise provided in this rule, *must* set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). (Emphasis added.)

**{¶ 36}** To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265, 664 N.E.2d 1272. A litigant may use the indirect method of proof. *Smith v. Greater Cleve. Regional Transit Auth.* (May 24, 2001), Cuyahoga App. No. 78274, citing *Byrnes*

---

shall be available."

*v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 1996-Ohio-307, 672 N.E.2d 145.

{¶ 37} With respect to this method of proof, the Ohio Supreme Court has adopted the analytical framework in cases involving claims of racial or gender discrimination that was established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *Blake v. Beachwood City Schools Bd. of Edn.*, Cuyahoga App. No. 95295, 2011-Ohio-1099, ¶18, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 421 N.E.2d 128.

{¶ 38} Under that framework, a plaintiff-employee establishes a prima facie case of discrimination by producing evidence of each of the following elements: 1) he was a member of the statutorily protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position; and, 4) a comparable, non-protected person was treated more favorably. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *McDonnell Douglas*.

{¶ 39} Only after the plaintiff-employee establishes a prima facie case does the burden shift to the defendant-employer to overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for adverse actions taken against the employee. Then, if the employer meets this test, the plaintiff

must show that the rationale set forth by the employer was only a pretext for unlawful discrimination.

{¶ 40} In this case, in the face of Woodmere's properly-supported motion, Brown produced no evidence at all, let alone evidence that demonstrated he could establish a prima facie case of racial discrimination. The presumption, therefore, never arose.

{¶ 41} Brown acknowledged in his deposition testimony that during his more than ten years with the village police department, the mayor, chiefs of police, and village council members were mainly of the same race as he. In itself, this fact raised an inference that racial discrimination did not occur. *Brown v. CSC Logic, Inc.* (5th Cir. 1996), 82 F.3d 651, 658.

{¶ 42} Moreover, the third element of his discrimination claim required proof that Brown was "qualified" to be a police officer. Brown admitted in his testimony that his superiors had justifiably disciplined him on many occasions for, inter alia, improper discharge of his weapon, conduct unbecoming of an officer, dishonesty, and gross neglect of duty.

{¶ 43} Brown further admitted that he was aware of the village's electronic use policy and his use of the sergeant's computer was in violation of the policy. Brown additionally acknowledged that, just before his improper computer use was discovered, he had received a promotion. The mayor testified that she terminated Brown after she

viewed the pornographic images that were on the sergeant's computer; the images included pictures of Brown's genitalia.

{¶ 44} Furthermore, with respect to the fourth element required for a successful race-discrimination claim, Brown admitted he could think of no instances in which a Caucasian police officer received better treatment than he did. Under the circumstances presented in this case, summary judgment on Brown's racial discrimination claim was entirely appropriate. *Mosley v. Cuy. Cty. Bd. of Mental Retardation*, Cuyahoga App. No. 96070, 2011-Ohio-3072.

{¶ 45} Brown's second assignment of error, therefore, also is overruled.

{¶ 46} The trial court's orders are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, J., and
EILEEN A. GALLAGHER, J. CONCUR