[Cite as *Leeds v. Westman, Weinberg & Reis Co., L.P.A.*, 2021-Ohio-4123.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KATHERINE LEEDS, F.K.A.
KATHERINE MERHULIK,

      Plaintiff-Appellant,

      v.

WELTMAN, WEINBERG & REIS CO.,
L.P.A.,

      Defendant-Appellee.

:
:
:
:
:
:
:
:

No. 110348

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 18, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-922944

---

### *Appearances:*

Grubb and Associates, L.P.A., Natalie F. Grubb, and Mark
E. Owens, *for appellant.*

Frantz Ward, L.L.P., Brian J. Kelly, and Megan E. Bennett,
*for appellee.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Plaintiff-appellant, Katherine Leeds ("Leeds"), appeals the trial court's judgment granting summary judgment to defendant-appellee, Weltman, Weinberg & Reis Co. ("Weltman") on her age-discrimination claims. She also

appeals several evidentiary rulings by the trial court.  For the reasons that follow, we affirm.

## I.  Background

{¶ 1}  Weltman is a law firm that provides services to clients across the United States with offices located in Ohio, Pennsylvania, Illinois, Michigan, and Kentucky.  It employs a variety of attorneys and support staff who are divided into different departments.  One of those departments is the Collections Strategy Services Department, which ensures that collections activities on behalf of Weltman's clients are conducted according to the requirements of the Fair Debt Collection Practices Act, client standards, and firm policies.

{¶ 2}  Over the past several years, Weltman has found it necessary to reduce the number of personnel as a result of changing business conditions and as a result, has conducted a number of reductions in force ("RIF").  One such RIF occurred in September 2016, when Weltman decided that it was necessary to conduct a RIF in various departments due to then-current and expected business conditions.

{¶ 3}  Weltman developed a set of guidelines as a tool to help identify employees to be included in the RIF.  The guidelines directed management to review each employee's most recent performance review, corrective action, and seniority. The manager of each department then provided the requested information to Human Resources for each employee in the department.  Human Resources collected and aggregated the data provided by the managers on a "scorecard."  In order to ensure uniformity, responses to each factor were assigned a point value.

Human Resources gave employees a point value for each of the relevant areas and then added the points together for a total score. Generally, the employee with the lowest score in the department was chosen for the reduction.

{¶ 4} Leeds was hired in 2009 as a legal collector in Weltman's Cleveland office. She was 52 years of age when she was hired. In 2010, she transferred to Weltman's Brooklyn Heights office, where she continued to work for the remainder of her employment. In December 2012, when she was 55 years old, Leeds was promoted to the Quality Assurance Call Monitor position in the Collections Strategy Services Department. Leeds's title subsequently changed in July 2016 to Quality Assurance Specialist ("QAS"), although her responsibilities generally remained the same. Leeds was subject to performance write-ups by various managers during her employment. Prior to her inclusion in the September 1, 2016 RIF, she received a verbal warning for poor job performance.

{¶ 5} Immediately prior to the 2016 reduction, Weltman employed four employees in the QAS position — three in the Brooklyn Heights office and one in the Cincinnati office. Nikkia Hamler worked in the Collections Strategy Services Department as the Collections/Probate Training Manager. Prior to the September RIF, she began working with Weltman's Human Resources Department to plan for the RIF. As part of this process, Hamler collected information regarding overall work performance, corrective action, and seniority, as set forth in the guidelines, for the four employees in the QAS position. Hamler provided the information to

Human Resources, which assigned a uniform point value to each factor and developed rankings for the four employees in the QAS position.

{¶ 6} Based on the information provided to Human Resources by department managers, Weltman's management developed a plan that called for the reduction of 23 employees from different departments across the firm. Human Resources reviewed the list of employees selected for the reduction for potential discrimination and concluded that Weltman could proceed with the RIF.

{¶ 7} In light of firm-wide financial analysis and expectations for the Collections Strategy Services Department, Weltman's management concluded that it was necessary to eliminate one position in the department. Leeds was the person chosen for elimination because her score was the lowest of the persons in her position.

{¶ 8} On September 1, 2016, Weltman began implementing the RIF, which took place over a several-week period. The employees chosen for the RIF included employees with ages ranging from 23 to 67 years of age. Hamler and Kimberly Clark from Human Resources met with Leeds on September 1, 2016, and communicated the termination decision to her. All employees selected for the RIF, including Leeds, were encouraged by Human Resources to apply for any open position at Weltman for which they might be qualified. Some employees, none of whom were in Leeds's department, applied for and were offered positions for which they were qualified and thus were not terminated. Leeds chose not to apply for any other position at Weltman when she was terminated in the RIF.

**{¶ 9}** Weltman did not replace Leeds or the other employees who were terminated as a result of the RIF. The positions were eliminated and the tasks they had been performing were assigned to existing employees in the various departments. Leeds's job duties were redistributed to the remaining QAS employees in her department, all of whom were over 40 years of age.

**{¶ 10}** After her termination, Leeds brought suit against Weltman asserting claims for disparate-treatment age discrimination in violation of R.C. 4112.02,[1] disparate-impact age discrimination in violation of R.C. 4112.02 and 4112.14,[2] and punitive damages.

**{¶ 11}** The trial court issued an amended case management entry ordering that "all paper discovery due by 06/19/20; plaintiff's expert report due by 06/19/20; defendant's expert report due by 07/24/20; all dispositive motions due by 08/03/20; final pretrial set for 10/27/20 at 10:00 a.m.; trial set for 11/09/20 at 10:00 a.m."

**{¶ 12}** The parties engaged in discovery. Leeds timely served the original report of her expert, Dr. Rebecca Fang, and an addendum to Dr. Fang's report.[3]

---

[1] R.C. 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice for any employer, because of the * * * age * * * of any person, to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

[2] Under R.C. 4112.14, "[n]o employer shall * * * discharge without just cause any employee aged 40 or older who is physically able to perform the duties and otherwise meets the established requirements of the job * * *."

[3] This is a refiled case. Leeds dismissed her original complaint against Weltman in Cuyahoga C.P. No. CV-17-876521 in October 2018, with the parties' summary judgment

Weltman also timely filed its expert report. Both parties subsequently filed motions for summary judgment. In her brief in opposition to Weltman's motion, Leeds attached as Exhibits A and D the affidavits of Kamal Strowder ("Strowder") and Carrie Grace Spence ("Spence"), as well as the rebuttal expert report of Dr. Fang as Exhibit F. Weltman moved to strike the affidavits and Dr. Fang's rebuttal expert report. The trial court granted Weltman's motion to strike the affidavits, ruling that Leeds "failed to identify or supplement her discovery responses timely and filed affidavits of individuals never previously identified only in response to defendant's motion for summary judgment." The court also granted Weltman's motion to strike Dr. Fang's rebuttal expert report, finding that Leeds "did not request nor did she receive leave to file a rebuttal expert report after the expert report deadline. Allowing [her] to introduce this new evidence is clearly prejudicial."

{¶ 13} The trial court also granted Weltman's motion for summary judgment and denied Leeds's motion. Leeds then filed a request for findings of fact and conclusions of law pursuant to Civ.R. 52 regarding the trial court's judgment. She also filed the affidavits of Strowder and Spence, the transcript of Strowder's deposition, and Dr. Fang's rebuttal expert report "in support of" her request. The trial court denied the request for findings of fact and conclusions of law, and struck Dr. Fang's report, the affidavits, and the deposition transcript from the record, ruling that Leeds was "simply trying to introduce new evidence that was not part of

motions pending and five days before trial. Dr. Fang prepared an expert report in the original case and an addendum to her report for this case.

the record, and was in some instances specifically stricken from the record, so as to use that evidence in her appeal." This appeal followed.

## II. Law and Analysis

### A. Dr. Fang's Rebuttal Expert Report

{¶ 14} In her first assignment of error, Leeds contends that the trial court abused its discretion in striking Dr. Fang's rebuttal expert report supplied on August 31, 2020, as an attachment to her brief in opposition to Weltman's summary judgment motion. She contends that the rebuttal report was timely supplied.

{¶ 15} Leeds points to Loc.R. 21.1(B) of the Court of Common Pleas of Cuyahoga County, General Division, regarding expert reports, which provides that "all supplemental reports must be supplied no later than thirty (30) days prior to trial." She contends that she fully complied with the trial court's June 19, 2020 deadline for the submission of Dr. Fang's primary expert report, and because the trial court did not set a deadline for rebuttal expert reports, she had until 30 days prior to trial, or February 6, 2021, to file any rebuttal expert report. She further contends that Weltman was not prejudiced by the submission of Dr. Fang's rebuttal report because it did not present any new statistical theories or evidence but merely pointed out the errors and lack of credibility of Weltman's expert.

{¶ 16} Our standard of review concerning the trial court's ruling on a Loc.R. 21.1 question is abuse of discretion. *Blandford v. A-Best Prods. Co.*, 8th Dist. Cuyahoga Nos. 85710 and 86214, 2006-Ohio-1332, ¶ 13; *see also Dolan v. Cleveland Builders Supply Co.*, 8th Dist. Cuyahoga No. 62711, 1993 Ohio App. LEXIS 3080,

20 (June 17, 1993) ("The trial court has discretion to determine whether a party has complied with Loc.R. 21.1 and to determine the appropriate sanction for its transgression.") An abuse of discretion is more than an error of judgment; it means that the trial court's judgment was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We find no abuse of discretion here.

{¶ 17} Initially, we disagree with Leeds's assertion that the supplemental report was timely filed because it was filed 30 days prior to trial. The argument is not applicable to the circumstances here because Leeds sought to rely on the supplemental report at the summary judgment stage of the proceedings, not at trial.

{¶ 18} Further, Loc.R. 21.1(A) states that "[t]he parties shall submit expert reports in accord with the time schedule established at the Case Management Conference." On June 6, 2020, the trial court set an updated case management schedule, which required Leeds to serve her expert report to Weltman by June 19, 2020. Leeds served Dr. Fang's rebuttal report more than two months after the expert report deadline, however, and after Weltman had already filed its motion for summary judgment. Not only had the deadline for serving expert reports passed when Leeds served Dr. Fang's rebuttal report but, as the trial court noted in its judgment entry striking the supplemental report, Leeds did not request nor did the trial court grant her leave to file a supplemental report after the expert report deadline had passed. Accordingly, the rebuttal expert report was not timely filed.

**{¶ 19}** We likewise find no merit to Leeds's assertion that Weltman was not prejudiced by the late filing of Dr. Fang's rebuttal expert report. Weltman obviously relied on Leeds's previously produced expert reports to prepare its motion for summary judgment and had no notice of the rebuttal report. The lack of notice of the rebuttal expert report hampered Weltman's ability to prepare its motion for summary judgment and thereby prejudiced its ability to defend against Leeds's claims.

**{¶ 20}** This court addressed the identical situation in *Saikus v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 77802, 2001 Ohio App. LEXIS 1696 (Apr. 12, 2001), and held that the trial court did not abuse its discretion in granting Ford's motion to strike the appellant's supplemental expert report where (1) the plaintiff attempted to use the supplemental expert report in responding to Ford's summary judgment motion, (2) Ford relied on the previous reports of plaintiff's expert in preparing its motion, and (3) the deadline for exchanging expert reports had passed. *Id.* at 10. Noting that the primary purpose of Loc.R. 21.1 "is to avoid prejudicial surprise resulting from noncompliance with the report requirement," this court found that "the trial court did not abuse its discretion by refusing to allow appellants to sandbag Ford with this new evidence." *Id.*

**{¶ 21}** We reach the same result here and find no abuse of discretion in the trial court's order striking Dr. Fang's rebuttal report from the record. The first assignment of error is overruled.

## B. Affidavits

{¶ 22} In her second assignment of error, Leeds contends that the trial court abused its discretion in striking the affidavits of former coworkers Strowder and Spence, which were produced as Exhibits A and D to her brief in opposition to Weltman's motion for summary judgment. We again review for abuse of discretion.

{¶ 23} Leeds failed to identify either of these witnesses in her responses to Weltman's first set of combined discovery requests. She likewise did not supplement her responses to include Strowder or Spence, as required by Civ.R. 26(E). Thus, Weltman was not aware of these witnesses until after it filed its summary judgment motion.

{¶ 24} Leeds acknowledges that she had a duty to supplement her discovery responses to identify persons having discoverable information and failed to do so, but contends that witnesses should not be excluded where the failure to comply was harmless. Civ.R. 37(C)(1); *Hornikel v. C.C. Barr Sahara, Inc.*, 8th Dist. Cuyahoga No. 60243, 1992 Ohio App. LEXIS 1861, 3 (Apr. 9, 1992) ("Exclusion of evidence is not mandated unless there is noncompliance and prejudice * * *.")

{¶ 25} We do not find Leeds's failure to identify Strowder and Pence to be harmless. Leeds produced affidavits from Strowder and Pence almost three months after the discovery cutoff and weeks after Weltman filed its motion for summary judgment. Leeds therefore denied Weltman the opportunity to cross-examine Strowder and Pence or conduct any discovery regarding their connection to this matter prior to filing its motion for summary judgment.

{¶ 26} We also are not persuaded by Leeds's argument that Weltman was not prejudiced because it should have known that Strowder and Pence were potential witnesses because they are former employees of Weltman. Weltman has employed hundreds of individuals over the years and cannot be expected to assume that any former employee is a potential witness in a given lawsuit.

{¶ 27} Where "a party fails to * * * identify a witness as required by Civ.R. 26(E), the party is not allowed to use that * * * witness to supply evidence on a motion[.]" Civ.R. 37(C)(1). Thus, because the affidavits of Strowder and Spence were not proper evidence for the trial court to consider, it did not abuse its discretion in striking the affidavits from the record. *See, e.g., Foster v. Sullivan*, 10th Dist. Franklin No. 13AP-876, 2014-Ohio-2909, ¶ 20 (trial court properly excluded affidavit by undisclosed witness); *Nichols v. Ac&S, Inc.*, Butler C.P. No. CV-2001-12-3016, 2008 Ohio Misc. LEXIS 443, 3 (Sept. 3, 2008) (striking affidavit from the record when witness was identified after the close of discovery and after motions for summary judgment were filed). The second assignment of error is overruled.

## C. Newly Asserted Evidence

{¶ 28} In her third assignment of error, Leeds contends that the trial court erred in striking from the record Dr. Fang's rebuttal expert report, Strowder's and Spence's affidavits, and Strowder's deposition transcript, all of which Leeds filed "in support of" her Civ.R. 52 motion for findings of fact and conclusions of law. The trial court ruled that Leeds could not use "an inappropriately filed" Civ.R. 52 motion "as a means to introduce new evidence that was not a part of the record prior to

dismissal." Further, the court found that Leeds was using the Civ.R. 52 motion to introduce new evidence that was not part of the record and that her misuse of Civ.R. 52 to "bootstrap" evidence into the record was inappropriate. We find no abuse of discretion in the trial court's ruling.

{¶ 29} Civ.R. 52 does not apply where a court has decided a case on summary judgment pursuant to Civ.R. 56. The rule states:

> Findings of fact and conclusions of law required by this rule and by Civ.R. 41(B)(2) and Civ.R. 23(G)(3) are unnecessary upon all other motions including those pursuant to Civ.R. 12, Civ.R. 55 and Civ.R. 56.

This is so because the appellate court applies a de novo standard of review to a trial court's summary judgment decision; findings of fact and conclusions of law by the trial court therefore serve no purpose in that situation for the court of appeals. Accordingly, as the trial court held, Leeds's motion for findings of fact and conclusions of law pursuant to Civ.R. 52 was "inappropriately filed."

{¶ 30} The trial court had already stricken Dr. Fang's rebuttal expert report and Strowder's and Pence's affidavits from the record when Leeds filed her Civ.R. 52 motion. Similarly, Strowder's deposition transcript was not filed with the summary judgment briefing in the trial court. In fact, his deposition did not occur until November 2, 2020, months after the parties filed their summary judgment briefs, and Leeds did not file his deposition transcript with the trial court until after the trial court had rendered its decision and the case had been dismissed.

{¶ 31} "The record on appeal consists only of matters, or evidence, which was before the trial court." *Pailet v. Univ. of Cincinnati Hosp.*, 10th Dist. Franklin

No. 82AP-952, 1983 Ohio App. LEXIS 16069, 5 (June 30, 1983). Because Dr. Fang's expert rebuttal report, Strowder's and Pence's affidavits, and the transcript of Strowder's deposition transcript were not timely filed, they were not part of the record before the trial court. Their filing "in support of" Leeds's Civ.R. 52 motion suggests an attempt to supply for appeal evidence that Leeds should have supplied to the trial court in connection with her motion for summary judgment. Accordingly, the trial court did not abuse its discretion in striking them from the record. The third assignment of error is overruled.

## D. Disparate-Treatment Age Discrimination

{¶ 32} In her fifth assignment of error, Leeds contends that the trial court erred in granting summary judgment to Weltman on her disparate-treatment age discrimination claim.

{¶ 33} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶ 34} The evidentiary guideline regarding burdens of proof in discrimination cases was set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 452 N.E.2d 807 (1983), the Ohio Supreme Court adopted the *McDonnell Douglas* analytical framework and applied it to age discrimination cases.

{¶ 35} The *McDonnell Douglas* analysis involves a three-step procedure that allocates the shifting burdens of production of evidence to the parties. Under this analysis, the employee must first establish a prima facie case of age discrimination. Next, the burden of production shifts to the employer to state some legitimate non-discriminatory reasons for the employee's discharge. Finally, the burden shifts back to the employee to show that the employer's stated reasons were a pretext for age discrimination. *Wang v. Goodyear Tire & Rubber Co.*, 68 Ohio App.3d 13, 16, 587 N.E.2d 387 (9th Dist.1990), citing *McDonnell Douglas* and *Barker*.

{¶ 36} A prima facie claim for age discrimination may be proven by direct or circumstantial evidence. *Vickers v. Wren Indus.*, 2d Dist. Montgomery No. 20914, 2005-Ohio-3656, ¶ 25. Absent direct evidence of age discrimination (of which Leeds has offered none), a plaintiff seeking to establish a prima facie case must show that she (1) is a member of a protected class, (2) was subject to an adverse employment decision, (3) is qualified for the position, and (4) was replaced by a substantially

younger person or a similarly situated nonprotected employee was treated more favorably. *Mauzy v. Kelley Servs.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272 (1996).

{¶ 37} When a plaintiff's position is eliminated in a RIF, the fourth element of the prima facie case is modified to require the plaintiff to provide additional evidence, whether direct, circumstantial, or statistical, to establish that age was a factor in the decision to terminate. *Vickers* at ¶ 29, citing *Mack v. B.F. Goodrich Co.*, 121 Ohio App.3d 99, 101-102, 699 N.E.2d 97 (8th Dist.1997); *Kundtz v. AT&T Solutions, Inc.*, 10th Dist. Franklin No. 05AP-1045, 2007-Ohio-1462, ¶ 21. As a result, a plaintiff claiming age discrimination carries a greater burden of supporting his allegations of age discrimination where the termination is due to economic necessity. *Ramacciato v. Argo-Tech Corp.*, 8th Dist. Cuyahoga No. 84557, 2005-Ohio-506, ¶ 29. The rationale for this burden is that "an employer's decision to discharge a qualified, older employee should not be considered 'inherently suspicious' because 'in a RIF, qualified employees are going to be discharged." *Id.*, quoting *Brocklehurst v. PPG Indus.,* 123 F.3d 890, 896 (6th Cir.1997). Thus, in a RIF case, the plaintiff must offer some additional evidence to show a discriminatory intent by the employer.

{¶ 38} The trial court properly granted Weltman's summary judgment motion because Leeds failed to establish a prima facie case of age discrimination. Specifically, she did not provide any evidence demonstrating that she was replaced by a substantially younger person. "[A] prima facie case of age discrimination is not established unless the employee shows that he or she was actually replaced by a

younger person." *Carpenter v. Wellman Prods. Group*, 9th Dist. Medina No. 03CA0032-M, 2003-Ohio-7169, ¶ 17. "A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990).

{¶ 39} The evidence is clear that Leeds's job duties were redistributed to the remaining QAS employees in her department, all of whom were over 40 years of age. "Where there is no new employee hired as a 'replacement' for the discharged employee but rather the discharged employee's job duties are redistributed among a number of employees, if one employee in that redistribution group is a member of the same protected class as the discharged employee, the fourth element is 'necessarily' not satisfied." *Vickers*, 2d Dist. Montgomery No. 20914, 2005-Ohio-3656 at ¶ 26. Leeds offered no evidence that she was replaced by anyone at Weltman, let alone replaced by a substantially younger employee. Nor did she dispute that her duties are now being performed by the other QAS employees, all of whom are over 40 years of age. Because Leeds's job duties were redistributed among employees all of whom are members of the same protected class, the fourth element of the prima facie case is not satisfied.

{¶ 40} Nevertheless, Leeds contended in her summary judgment motion that she established a prima facie case of disparate-treatment age discrimination because although she was not replaced, she was treated differently than similarly-situated, younger employees. Specifically, she contended that five younger employees were offered the option to switch positions at the firm rather than be

included in the RIF. However, the record evidence demonstrated that all five individuals worked in different departments than Leeds, had different job duties than she did, and worked under different supervisors. Accordingly, none of these employees were "similarly situated" to Leeds, and her allegations about them are therefore irrelevant. *See, e.g., Almond v. ABB Indus. Sys.*, S.D. Ohio No. C2-95-707, 2001 U.S. Dist. LEXIS 6507, 91-92 (Mar. 6, 2001) (retaining younger employees in positions for which plaintiff was qualified was irrelevant because employees in different departments with different supervisors are not similarly situated). Furthermore, Leeds's argument that Weltman singled her out due to her age by not offering her another position at the time of the RIF is undermined by the fact that the evidence demonstrates that five employees under the age of 40 let go in the RIF were not offered other positions at the firm.

{¶ 41} Moreover, Leeds was encouraged by Human Resources to apply for any open position at the firm for which she might be qualified, but chose not to apply at the time she was separated in the RIF. And although she relies on the fact that she applied for and was not selected for positions with Weltman in November 2017 and January 2018, Weltman's personnel decisions more than one year *after* the 2016 RIF are not legally relevant to this case.

{¶ 42} "Without evidence that [the employer] treated similarly situated employees outside of the protected class differently, [an employee] cannot establish a prima facie case of age discrimination." *Wagner v. Matsushita Electronic Components Corp. of Am.*, 93 Fed.Appx. 714, 717 (6th Cir.2004). The trial court

properly granted summary judgment to Weltman on Leeds's disparate-treatment age discrimination claim, and the fifth assignment of error is overruled.

### E. Disparate-Impact Age Discrimination

{¶ 43} In her fourth assignment of error, Leeds contends that the trial court erred in granting summary judgment to Weltman on her disparate-impact age discrimination claim.

{¶ 44} Disparate-impact discrimination "'[i]nvolves employment practices that are facially neutral in their treatment of different groups but fall more harshly on one group.'" *Chisholm v. Cleveland Clinic Found.,* 2019-Ohio-3369, 141 N.E.3d 674, ¶ 28 (8th Dist.), quoting *Albaugh v. Columbus*, 10th Dist. Franklin No. 02AP-687, 2003-Ohio-1328, ¶ 11. "Indeed, 'some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.'" *Id.*, quoting *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 988, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

{¶ 45} "To establish a disparate-impact-discrimination claim, the plaintiff must identify a specific employment practice that is allegedly responsible for any observed disparity and present relevant statistical evidence sufficient to show that the employment practice in question caused the alleged discrimination." *Id.*, citing *Watson* at *id.*

{¶ 46} The statistical evidence offered in support of a disparate-impact discrimination claim must be statistically significant. *Id.* at ¶ 30. "Statistical significance establishes that the outcome of a particular process is not due to chance,

but rather is causally linked to the variable at issue." *Id.*, citing *Bert v. AK Steel Corp.*, S.D.Ohio No. 1:02-cv-00467, 2006 U.S. Dist. LEXIS 22904, 6 (Apr. 24, 2006). "In other words, 'statistical disparities must be sufficiently substantial that they raise such an inference of causation.'" *Id.*, quoting *Watson* at 994-995. "'An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact.'" *Id.*, quoting *Warden v. Ohio Dept. of Natural Resources*, 2014-Ohio-35, 7 N.E.3d 533, ¶ 54 (10th Dist.).

{¶ 47} With regard to the "specific employment practice" element of her disparate-impact claim, Leeds contended in her motion for summary judgment that Weltman used a "scorecard" in a way that had an adverse impact on older employees who were included in multiple RIFs from 2008 through 2016. But the evidence refutes this claim. Weltman only began using the "scorecard," which collects objective employment criteria such as seniority, discipline, and performance, to evaluate employees in 2016. Thus, the scorecard could not have been the "specific employment practice," as alleged by Leeds, that caused a disparate impact based on data from 2008 to 2016.

{¶ 48} Additionally, Leeds's attempt to establish that the scorecards were a facially neutral employment practice that had an adverse impact on older employees is undermined by her assertion in her motion for summary judgment that the scorecard was "facially discriminatory" and "constitute[d] disparate treatment" because it included the employee's age for use by decisionmakers. (Leeds's motion, p. 42). As the district court found in Leeds's federal lawsuit against Weltman,

because the scorecard included age, "it is not a neutral policy or practice that resulted in an adverse disparate impact" on Leeds. *Merhulik v. Weltman*, N.D. Ohio No. 1:20 CV 1188, 2020 U.S. Dist. LEXIS 229434, 10-11 (Dec. 7, 2020);[4] *see also Fannon v. AAP St. Marys Corp.*, 6th Cir. No. 96-3506, 1997 U.S. App. LEXIS 23776 (Sept. 5, 1997) (disparate impact theory is inapplicable to a facially discriminatory policy).

{¶ 49} Furthermore, even if Leeds had identified a specific employment practice to support her disparate-impact claim, she did not present a statistically relevant analysis to prove that the employment practice caused an adverse impact on employees over 40. In her summary judgment motion, Leeds relied on the calculations and conclusions in Dr. Fang's March 14, 2018 report. In the report, Dr. Fang's first analysis compared the number of employees separated in each RIF during the years 2008-2016 to the number of "active" employees on a yearly basis. Dr. Fang's second analysis in the report compared the total number of employees separated in all RIFs during 2008-2016 to the total number of "active" employees during 2008-2016.

{¶ 50} "Active employee" was determined by Dr. Fang to be employees who were hired in a particular year and were still employed at the time Dr. Fang completed her calculations. As pointed out by Weltman's expert, Dr. Dubravka Tosic, in his report, this definition of "active employee" obviously excluded a number

---

[4] Leeds was formerly known as Katherine Merhulik.

of employees from Dr. Fang's calculations.  Additionally, as also noted by Dr. Tosic, this definition, and consequently Dr. Fang's methodology, differs from common statistical analysis, which would compare the proportion of RIF'd employees by age (those under 40 and those 40 and over) to the proportion of employees who were actively employed during the same time period by age, irrespective of when they were hired.  Dr. Fang's calculations are therefore not "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the alleged discrimination."  *Warden*, 10th Dist. Franklin No. 13AP-137, 2014-Ohio-35 at ¶ 51.

{¶ 51}  Leeds also relied on Dr. Fang's addendum report, in which Dr. Fang compared the total score on the scorecard assigned to each employee included in the 2016 RIF to the total score assigned to each "active" employee who was not included in the RIF.  But these calculations are irrelevant to Weltman's selection process and the disparate-impact analysis because employees were selected for the 2016 RIF based upon each *department's* business conditions.  Thus, employee scores were compared to others in the same position or department, and not across the entire firm, unlike Dr. Fang's calculations in the addendum.  Dr. Fang's statistical analysis is therefore inapplicable to facts at issue here, and consequently, has little probative value.

{¶ 52} Finally, courts have consistently held in RIF cases that the appropriate statistical analysis is not the termination rate but the retention rate, which Dr. Fang's calculations do not examine or evaluate.  *See*, *e.g.*, *Smith v. Allstate Ins. Co.*, N.D. Ohio No. 5:04CV2055, 2005 U.S. Dist. LEXIS 13015, 30 (June 30,

2005); *Smith v. Xerox Corp.*, 196 F.3d 358, 368 (2d Cir.1999) ("[T]he questions to be answered are thus what is the composition of the population subject to the reduction in force, what was the retention rate of the protected group compared to the retention rate of other employees, and how much of a differential in selection rates will be considered to constitute a disparate impact.") Instead, all of Dr. Fang's calculations are based solely upon the termination rate of employees over 40 years old and those under 40 years of age.

{¶ 53} Accordingly, for the reasons stated above, the trial court properly determined that Leeds "failed to present probative statistical evidence" demonstrating disparate-impact age discrimination, and it properly granted summary judgment to Weltman on this claim. The fourth assignment of error is overruled.

**F. Pretext**

{¶ 54} Although not necessary to our determination that the trial court properly granted summary judgment to Weltman on her disparate treatment and disparate-impact age discrimination claims, we further find that even if Leeds had proved a prima facie case of either disparate treatment or disparate impact age discrimination, Weltman was still entitled to summary judgment under the *McDonnell Douglas* analysis because it proffered a legitimate, nondiscriminatory reason for her termination (economic necessity) that Leeds failed to demonstrate was a pretext for age discrimination.

{¶ 55} To establish pretext, Leeds was required to demonstrate that Weltman's reason for her termination (1) had no basis in fact, (2) did not actually motivate the termination decision, or (3) was insufficient to warrant the termination. *Kundtz*, 10th Dist. Franklin No. 05AP-1045, 2007-Ohio-1462 at ¶ 32.

{¶ 56} Leeds attempted to establish pretext by arguing that Weltman's stated reason for her termination had no basis in fact because Weltman "fell woefully short" of establishing that the September 2016 RIF was the result of economic necessity. But the testimony of Weltman's then-current chief operations officer, chief financial officer, and two members of its management committee established that in 2016, the regulations implemented by the Consumer Financial Protections Bureau impacted the collections industry as a whole and that, as a result, Weltman's revenue was dramatically lower than expected. The evidence further established that Weltman's revenue forecast for future months was well below budget, and in August 2016, Weltman borrowed against the firm's line of credit in order to meet payroll for the month. As a result, Weltman determined that in addition to other financial changes — such as a decrease in shareholder draws, offers of early retirement, and banning unnecessary travel or entertainment — it needed to reduce approximately two million dollars in annual payroll expense. Although Leeds contends that Weltman could only establish economic necessity by providing financial records to the court, the record reflects that it provided detailed, firsthand evidence of its dire financial state at the time of the 2016 RIF from a variety of sources, thereby establishing economic necessity.

**{¶ 57}** Nor did Leeds establish pretext by demonstrating that Weltman had effective alternatives to the 2016 RIF that would not have caused the alleged discriminatory impact. Although Leeds contends that Weltman should have furloughed employees instead of terminating them, she presents no evidence that this alternative would have impacted her or any other employees included in Weltman's RIFs over the years any differently. Furthermore, the evidence showed that although Weltman engaged in other cost-saving measures prior to resorting to the 2016 RIF, there were no equally effective alternatives to the RIF available.

**{¶ 58}** Nor did Leeds present any evidence showing the RIF was a pretext to terminate her because of her age or that her termination was not warranted. Leeds and the other employees selected for termination in the RIF were chosen on the basis of objective, neutral guidelines applied to all employees regardless of their age. Indeed, although age was listed on the scorecard, it was not a factor for management to consider or to assign a point value, and it had no bearing on whether an employee was chosen for the RIF. Although Leeds contends that she should not have been selected for the RIF because of her "excellent job performance," her personal opinion about her performance at Weltman is insufficient to prove pretext. *Kundtz* at ¶ 40 ("An employee's own opinions about his or her qualifications do not establish a material factual dispute on the issue of pretext.") Similarly, Leeds's assertion that her July 2016 discipline was "bogus" is mere conjecture that is insufficient to withstand a summary judgment motion. *Harris v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 89541, 2008-Ohio-676, ¶ 18 ("Mere

conjecture that the employer's proffered reason is pretext is insufficient to withstand a summary judgment motion.").

{¶ 59} Leeds's argument that the RIF was a pretext for age discrimination is also refuted by evidence that Weltman hired Leeds when she was 52 years of age and promoted her when she was 55, and the September 2016 RIF included individuals of ages ranging from 23 to 67 years of age. Leeds failed to provide evidence demonstrating that her separation from employment was related to her age and offered only speculation that her age was the actual reason motiving her discharge. Accordingly, she failed to demonstrate that the RIF was a pretext for discrimination.

### G. Punitive Damages

{¶ 60} In her sixth assignment of error, Leeds contends that the trial court erred in granting summary judgment to Weltman on the issue of punitive damages. "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 335, 512 N.E.2d 1174 (1987).

{¶ 61} There is no evidence that Weltman acted with any malice. Leeds was selected for the economically necessary RIF based upon objective criteria, her duties were distributed to the remaining employees in her department, all of whom were over age 40, and she was not replaced. Thus, Weltman is entitled to summary

judgment with regard to the punitive damages claim, and the sixth assignment of error is overruled.

{¶ 62} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EMANUELLA D. GROVES, J., CONCUR